**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Alberto M. ARENDS, Defendant-Appellee.**

**No. 85–5034**
**Non-Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

Nov. 13, 1985.

---

Stanley Marcus, U.S. Atty., Paul DiPaola, Nancy L. Worthington, Linda C. Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellant.

Frederick Robbins, Geoffrey C. Fleck, Peter Raben, Miami, Fla., for defendant-appellee.

Before GODBOLD, Chief Judge, HILL and ANDERSON, Circuit Judges.

GODBOLD, Chief Judge:

Arends was indicted on one count of transporting over $5,000 out of the United States without filing a currency and monetary instrument report, in violation of 31 U.S.C. § 5316(a)(1)(A) and § 5322(b). *See also* 31 C.F.R. § 103.23 and 103.49(b). The district court granted his motion to suppress the currency because it was seized without a warrant in violation of 31 U.S.C. § 5317(a) (1983).

Canine Officer Eckard, a member of the Customs Service assigned to a special contraband enforcement team for two weeks, discovered over $500,000 in currency during a random search of cargo being shipped from Miami to Aruba. For the most part Eckard used a dog trained to identify drugs or objects that had come into contact with drugs. When Eckard opened the packages containing the currency, his dog was resting. The dog subsequently identified a drug scent on the currency.

At a suppression hearing the district court found that Eckard was primarily searching for currency when he opened the boxes bound for Aruba. He did not have a search warrant. Defendant moved to suppress the currency on the basis of 31 U.S.C. § 5317(a) (1983), which required a warrant showing probable cause to search an individual, place, or object for possible violations of the currency reporting provisions.[1]

In *U.S. v. Chemaly*, 741 F.2d 1346 (11th Cir.1984), *rehearing en banc granted*, 741 F.2d 1363 (1984), *order granting reh'g en banc vacated and panel opinion reinstated*, 764 F.2d 747 (1985), this court held that unreported currency discovered after a warrantless search of the defendant was illegally obtained and had to be suppressed. The court applied § 5317 to outgoing searches,[2] and relying on the legislative history of the provision found that Congress intended it to apply to persons leaving the country. *Chemaly* at 1350.

█ The government asserts that *Chemaly* does not control this case because the search was of an object while in *Chemaly* the search was of a person. Section 5317 applies equally to searches of people, places and objects for possible reporting violations. We can find no basis in the statute or in *Chemaly* for treating searches of objects differently from searches of people.

█ The government contends that the currency was discovered incident to a valid search for drugs and other contra-

band and that the district court was plainly erroneous in finding that Eckard was searching for currency. In considering a ruling on a suppression motion all facts must be construed in the light most favorable to the successful party below. *U.S. v. Baron-Mantilla*, 743 F.2d 868, 870 (11th Cir.1984). Credibility choices made by the district court, *U.S. v. Waksal*, 709 F.2d 653, 656 n. 4 (11th Cir.1983), and factual determinations, *U.S. v. Newbern*, 731 F.2d 744, 747 (11th Cir.1984), must be upheld unless plainly erroneous.

█ The government concedes that Eckard was working in conjunction with an intensified two-week program of the Customs Service to enforce the export reporting requirements of the Export Administration Act, 50 U.S.C.App. § 2401 et seq. (1979), and the currency reporting requirements of 31 U.S.C. § 5316. Signs were posted in passenger areas with respect to declaring currency exports, and pamphlets were given out concerning both currency reporting and export licenses and declarations for export of merchandise. Public address announcements gave notice of the same subjects. In response to the government's contention that Eckard inadvertently came across the currency, the district court stated: "[t]he one thing that I am absolutely clear on in my mind, this was a concerted effort to discover money, not incidentally to do it, but to discover it." Tr. at 207. The record supports this conclu-

---

**1.** Section 5317(a) provided:

(a) The Secretary of the Treasury may apply to a court of competent jurisdiction for a search warrant when the Secretary reasonably believes a monetary instrument is being transported and a report on the instrument under Section 5316 of this title has not been filed or contains a material omission or misstatement. The Secretary shall include a statement of information in support of the warrant. On a showing of probable cause, the court may issue a search warrant for a designated person or a designated or described place or physical object. This subsection does not affect the authority of the Secretary under another law.

The statute has since been amended to remove the warrant requirement. *See* 31 U.S.C.

§ 5317(b), *as amended* Pub.L. 98–473, Title II, § 90(d), October 12, 1984, 98 Stat. 2135. The new provision went into effect after the events in this case. Under the new statute the government must have reasonable suspicion to search individuals or objects for currency violations.

**2.** No constitutional questions arise in the present case. The government argues, as it did in *Chemaly*, that the Fourth Amendment allows random searches of outgoing passengers at the border. The response of the court in *Chemaly* applies here: the only issue is the limit Congress has placed on such searches under § 5317. This circuit has not decided the constitutional limits under the Fourth Amendment on random searches of outgoing parcels under the special rules for border searches. *Chemaly* at 1351.

sion. The finding by the district court was not plainly erroneous.

*Chemaly* decided that suppression is an appropriate remedy for violation of the warrant requirement of § 5317. 741 F.2d at 1354 n. 2.[3]

AFFIRMED.

JAMES C. HILL, Circuit Judge, specially concurring:

This nation, through its government, may learn, by inspection, what is crossing its borders, with one exception. We held in *United States v. Chemaly*, 741 F.2d 1346 (11th Cir.1984) that the life blood of organized crime, currency, may not be inspected without a warrant. Because we are bound by that case, I concur.

---

3. In the recent modifications, footnote 1, *supra,* Congress did not explicitly provide a remedy for violations of the statute.