**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Douglas A. DENEMARK,**
**Defendant-Appellant.**

No. 85–3154.

United States Court of Appeals,
Eleventh Circuit.

Jan. 16, 1986.

---

1. 767 F.2d 1538 (11th Cir.1985).

William B. Plowman, Tampa, Fla., for defendant-appellant.

Karla Spaulding, Asst. U.S. Atty., Tampa, Fla., for plaintiff-appellee.

Before HILL and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is an appeal by Denemark from his conviction of having conducted 14 cash transactions with 14 different banks to prevent those banks from being required to file a Treasury Department Required Currency Transaction Report ("CTR") in violation of Title 18 U.S.C. § 1001. This statute provides that:

> Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and wilfully falsifies, conceals or covers up by any trick, scheme or device a material fact, or makes any false, fictitious, or fraudulent statements or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

## I. STATEMENT OF THE CASE

In June, 1983, defendant Denemark made an agreement to purchase a home in Tampa, Florida for $155,000. On the closing date for the sale of the house at the offices of Chelsea Title Company, the entire purchase price was to be paid to the sellers, Mr. and Mrs. Harry Lewis. Denemark arrived at the closing with a briefcase filled with cash and presented the currency to the Title Company to close the transaction. However, the company refused to accept the money and instructed Denemark that, instead, a certified check would be required to close the transaction. Denemark then left the closing and drove to a branch of the Barnett Bank to exchange the cash for a cashier's check. He was told there, however, that all currency transactions in excess of $10,000 were required to be reported by the bank to the Internal Revenue Service in a standard CTR form. No such form was required to be filed in transactions involving less than $10,000. The defendant then told the bank that he did not want to fill out or sign the required form and proceeded to leave the branch. He returned to the office of the Title Company, and in exchange for two piles of $9,900 in currency obtained two personal checks from two individuals present in the office. The checks were made out to Chelsea Title. These checks were then tendered to the Title Company as part of the purchase price.

Denemark then proceeded to a number of banks in the Tampa area and, apparently using several different names, purchased a number of cashier's checks for $9,900 cash each. Appellant then took these checks to the Title Company to tender them for final payment on the house.

On July 10, 1984, Denemark was interviewed by Laura Sherman, a Special Agent with the United States Customs Service. Sherman questioned Denemark regarding his sources of income and learned from him that he had not had a regular salary during the period 1980 to 1984; however, Denemark told the agent that he had received approximately $35,000 from his father, $7,000 in an insurance settlement and approximately $18,400 in sales commission as an aircraft broker. (It was never established at trial that any money was ever transferred from father to son.) The defendant further told Agent Sherman that he had purchased only three of the cashier's checks used to purchase the house and that each time he used the correct spelling of his name. He stated that an unidentified friend from the Cayman Islands purchased the remainder of the checks. Denemark then claimed that someone at the Title Company told him to purchase more than one check to avoid some unidentified paper work and denied any knowledge of currency transaction reports.

On November 8, 1984, a one count indictment was returned charging Denemark with using a "trick, scheme or device operating to conceal from and cover up from the Internal Revenue Service ... the existence, source, origin and transfer of approximately $154,232.50 by the purchase of approximately 14 cashier's checks and two personal checks in amounts less than $10,-000 from approximately 14 different financial institutions and two individuals, using a variety of names including some false names, as the remitters of these checks, for the purpose of avoiding the financial institutions' filing of currency transaction reports as required by Title 31, United States Code, Section 5313," in violation of Title 18, United States Code, Section 1001. A bench trial was held on January 28, 1985 and after a consideration of the evidence, the district judge found the defendant guilty as charged. This appeal followed.

## II. ISSUE PRESENTED

Whether it is a violation of Title 18, U.S.C., § 1001, for an individual to structure cash transactions in amounts less than $10,000 with various banks so as to avoid the financial institution's reporting requirement of Title 31, U.S.C., § 5313 before the effective date of the Tax Reform Act of 1984.

## III. DISCUSSION

Appellant Denemark attacks the very basis of his district court conviction, claiming that his actions involving the currency transaction violated no law. He argues that in order to constitute a violation of Title 18, U.S.C. § 1001, "the concealment and covering up of a material fact must be directed towards performance or failure to perform some act which is required by statute or regulation." The statute in question in this case, 31 U.S.C. § 5313, requires a bank to report to the Treasury Department currency transactions only in excess of $10,000. Denemark claims that neither the statute itself or related Treasury Department regulation requires an individual to structure financial transactions with banking institutions so as to make it necessary for a bank to file a Currency Transaction Report. Likewise, there is no requirement by statute or regulation that would require an individual to disclose the existence, source, origin and transaction of currency between private individuals. Clearly a financial institution has no duty to create or initiate a Currency Transaction Report unless an individual engages in a transaction with the institution, in a single transaction, involving currency of more than $10,000. In this case, Denemark ar-

gues that since none of his transactions with any of the banks exceeded $10,000, there was no duty on the part of any of these banks to file the required Currency Transaction Report. Therefore, he claims he should not have been prosecuted for causing the financial institution to fail to perform an act (filing a Currency Transaction Report) which the financial institution had no legal obligation to perform.

Denmark next claims that the only way that he could have been found to have violated the law is if all of his cash transactions were to be considered together as one single exchange. He argues that Title 31, U.S.C., § 5313, which requires the Currency Transaction Reports, does not include language which would combine a series of transactions. The statute provides that:

> (a) When *a* domestic *financial institution* is involved in *a transaction* for the payment, receipt, or transfer of United States coin or currency (or other monetary instruments the Secretary of Treasury prescribes), in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe, shall file a report on the transaction at the time and in the way the Secretary prescribes. A participant acting for another person shall make the report as agent or bailee of the person and identify the person for whom the transaction was being made.

Title 31, U.S.C., § 5313. (Emphasis added.) Denmark argues that since the statute "speaks only of a single transaction," the Government may not combine his various transactions. Therefore, "a Currency Transaction Report was not required from (the appellant) or the various financial institutions" involved and Denmark broke no law by his actions.

The Government attacks Denmark's arguments, calling his scheme "yet one more attempt to 'flout' the CTR filing requirements." It cites several 11th and former

5th Circuit cases including *U.S. v. Thompson*, 603 F.2d 1200 (5th Cir.1979) and *U.S. v. Tobon-Builes*, 706 F.2d 1092 (11th Cir. 1983), for the proposition that a reviewing court must apply a " 'substance over form analysis' ", when "dealing with schemes to circumvent financial institution reporting requirements." Appellee then discusses a number of cases in which transactions similar to the one at hand were developed to avoid the reporting requirements. In each case cited, the reviewing court commented that to allow the scheme would frustrate the congressional intent in the passage of the Currency and Foreign Transaction Reporting Act " 'to give law enforcement officials an important tool in fighting crime.' " Indeed, in *U.S. v. Thompson*, 603 F.2d 1200 (5th Cir.1979), the Fifth Circuit held that a decision to structure a large transaction into a group of smaller ones "with the intent to annul the reporting requirements does not equate to a decision to structure a financial transaction in a lawful manner so as to minimize or avoid the applicability of a tax covering only specific activity." *Id.* at 1204. The Government claims that each time a new variation of the same scheme to circumvent the Act's reporting requirement has been developed "the courts have pierced the myth of ... these 'legal' transactions and held, in each instance, that the act violates the law." This case should be no exception. According to the Government, the only reason Denmark purchased the 14 cashier's checks was to avoid the reporting requirement. These transactions should thus be considered together and the trial court finding of a violation of the law should be upheld.

The Government then attacks the appellant's argument that his actions were legal because neither he nor the banks had a duty to file a CTR in regard to each transaction. It argues that the crime charged in this case

> is not the failure to file a CTR. It is not aiding and abetting the failure to file a CTR. And, it is not causing a false CTR

to be filed. The crime charged is devising a scheme to conceal a currency transaction in excess of $10,000 from the IRS. There can be no doubt that the defendant by his actions did exactly that.

Gov.Br. at 20, 21.

The difficulty with the government's argument here is that the language used by the court in the cited cases must be viewed in light of the facts of the case. In *Thompson*, the president of a bank collaborated with a borrower who, with the bank president's knowledge, was borrowing money to finance importation of cocaine. In order to avoid the necessity of reporting on a CTR, the bank president had the borrower execute five promissory notes to the bank, each bearing a different due date. He then had the five promissory notes exchanged for $45,000 in currency which was paid over to the borrower. The Court of Appeals for the Fifth Circuit affirmed the conviction of Thompson by "piercing the veil," consisting of five promissory notes. The court held that the transaction was a single one involving a $45,000 exchange for cash, a result clearly called for under the statute and regulations.

In the *Tobon-Builes* case, Tobon with a large fund of currency and a confederate, acting with him, entered several different banks on the same day and in each instance, Tobon bought a cashier's check for a sum of less than $10,000 and his confederate at the same time in the same bank, bought a similar cashier's check. The court dealt with this matter as follows:

Considering the foregoing statutes, regulations, and form, we believe that Tobon was involved in at least ten separate "transactions in currency of more than $10,000," which were clearly within the ambit of the financial institution reporting requirement of 31 U.S.C. § 1081 and 31 C.F.R. § 103.22. The undisputed evidence showed that Tobon and Roman, acting on Tobon's behalf, went to ten different financial institutions and made virtually simultaneous pairs of cash purchases of cashier's checks, each pair totaling around $18,000. It is clear that Tobon and Roman acted as a "person" under the broad definition in 31 C.F.R. § 103.11, whether as a principal/agent, an association, or a joint venture. According to Tobon, all of the money involved in the transactions was his money from poker winnings, while Roman simply helped make purchases for him. And, by Tobon's own admission, his use of false names and his structuring of single $18,000 transactions as two sets of $9,000 cash transfers represented nothing more than a scheme to prevent the financial institutions from fulfilling their legal duty to file reports for these transactions.

*Id.* at 1098.

No such "transaction" took place here, nor do we have before us the problem that is raised where a person who wishes to convert currency into a cashier's check or other paper conducts such a transaction in several branches of a single bank in a single day.

Here, there was no transaction in a financial institution which would require any such institution to file a CTR. The recognized fact that Congress sought to give the Treasury an opportunity to obtain information about large amounts of cash cannot have the effect of making criminal conduct that does not fall within the very wide scope of Section 1001. We must be guided by the Supreme Court's decision in *Lanzetta v. New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939): "No one may be required at peril of life, liberty, or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." 306 U.S. at 453, 59 S.Ct. at 619.

Appellant was tried and convicted under the laws as they stood in 1983. As appears to be conceded by the appellant in his brief, Congress amended the relevant statutes in 1984 in a manner that might be construed in the future as making the acts engaged

**1564**

in by this appellant criminal hereafter. Title 26 U.S.C. § 6050I provides as follows:

RETURNS RELATING TO CASH RECEIVED IN TRADE OR BUSINESS.

(a) CASH RECEIPTS OF MORE THAN $10,000.—Any person—

(1) who is engaged in a trade or business—and

(2) who, in the course of such trade or business, received more than $10,000 in cash in 1 transaction (*or 2 or more related transactions*),

shall make the return described in subsection (b) with respect to such transaction (*or related transactions*) at such time as the Secretary may by regulation prescribe.

(Emphasis added.)

The judgment of conviction and the sentence are REVERSED.