UNITED STATES of America, Plaintiff-Appellee,

v.

Francis Martin GIANCOLA, and Charles A. Pifer, II, Defendants-Appellants.

No. 84–3861.

United States Court of Appeals, Eleventh Circuit.

March 12, 1986.

See also, 11th Cir., 754 F.2d 898.

Mark L. Horwitz, Orlando, Fla., for Giancola and Pifer.

Garry J. Stegeland, Asst. U.S. Atty., Orlando, Fla., Karen Skrivseth, U.S. Dept. of Justice, Washington, D.C., for the U.S.

Before HILL, Circuit Judge, TUTTLE and HENDERSON *, Senior Circuit Judges.

TUTTLE, Senior Circuit Judge:

This is an appeal from a conviction following a jury trial on two counts of conspiracy to defraud the United States in violation of 18 U.S.C. § 371. Section 371 makes it a crime for two or more persons to conspire either to commit any offense against the United States, or to defraud the United States. Appellants here have been convicted of conspiring to defraud the United States by structuring certain currency transactions totalling several hundred thousand dollars to thwart the ability of the United States to obtain information concerning currency transactions for more than $10,000 under 31 U.S.C. § 5323(a).

## I. STATEMENT OF THE CASE

In pertinent part, Section 5313(a) of Title 31 U.S.C. provides that:

> When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency ... in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution ... shall file a report on the transaction at the time and in the way the Secretary prescribes.

The relevant part of 5312(a)(2) of Title 31 U.S.C. provides:

> In this subchapter ...
> (2) "Financial institution" means (A) an insured bank (as defined in Section 3(h) of the Federal Deposit Insurance Act, 12 U.S.C. 1813(h)).

.   .   .   .   .

Appellants were indicted for having conspired to defraud the United States on two

---

* See Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

counts, one dealing with certain transactions made by appellants on October 28, 1983 and October 31, 1983, during which two days they together purchased for currency cashier's checks totalling $88,740, and on the second count for having on June 11 and June 27, 1984, engaged in similar transactions, this time purchasing for currency $179,122 worth of money orders from 32 banks or savings and loan institutions or branches thereof. In both types of purchases, they used some fictitious names.

There was ample proof that during several of these purchases on a single day, the two appellants, from the same cache of currency, bought either two cashier's checks for more than $10,000 at different branches *of the same bank* or bought money orders for more than $10,000 from different branches *of the same bank*. There was ample evidence of the fact that they did this for the purpose of preventing any "financial institution" from having to file a Currency Transaction Report ("CTR"). Such a report is required under regulations issued by the Secretary of the Treasury under the authorization of Section 5313:

> Each financial institution shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution, which involves a transaction in currency of more than $10,000.

31 C.F.R. § 103.22(a).[1]

There is no question that appellants did engage in a single transaction, although disguised as more than one, on the same day at branches of the same bank during the period covered by each count of the indictment.

## II. ISSUE

We consider the only issue to be decided is whether structuring the transactions in amounts of less than $10,000 in different branches of the same bank for the purpose of avoiding the currency reporting requirements of 31 U.S.C. § 5313 constitutes a conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.

## III. DISCUSSION

The appellants contend that there is no obligation on any financial institution to file a CTR unless a currency transaction for more than $10,000 in a single day is carried on at a single branch of a bank or savings institution. They base this argument on the definition section of the regulation at 31 C.F.R. § 103.11. There, a "financial institution" is defined as:

> Each agency, branch, or office within the United States of any person doing business in one or more of the capacities listed below:
>
> (1) A bank (except bank credit card systems);
>
> (2) A broker or dealer in securities;
>
> (3) A person who engages as a business in dealing in or exchanging currency as, for example, a dealer in foreign exchange or a person engaged primarily in the cashing of checks;
>
> (4) A person who engages as a business in the issuing, selling, or redeeming of travelers' checks, money orders, or similar instruments, except one who does so as a selling agent exclusively or as an incidental part of another business;
>
> (5) A licensed transmitter of funds, or other person engaged in the business of transmitting funds abroad for others;
>
> (6)(i) A casino or gambling casino licensed as a casino or gambling by a State or local government and having gross annual gaming revenue in excess of $1,000,000;
>
> (ii) A casino or gambling casino includes the principal headquarters and

---

1. This regulation has been amended but we consider appellant's conduct under the regulation as it existed at the time of the transactions.

any branch or places of business of the casino or gambling casino.

Appellants' argument is that since each branch of a bank is defined in the regulation as being a "financial institution," the transaction which is dealt with in the statute and regulation must be a transaction solely within a particular branch or office.

The government challenges this argument on two bases. The first is its argument that if a person has in his possession a substantial sum of currency in excess of $10,000 and, in order to prevent a bank or one of its branches from having to file a CTR with respect to his turning the currency into paper, he divides it up into several different packages and over a period of time, makes an exchange of currency for a cashier's check or a money order in any number of financial institutions, he is guilty, because he attempted to thwart the financial institution from having to file a CTR which he ought not to have done because he ought to have incorporated all of his transactions into one transaction in a single bank. The second basis for the government's argument is that where a person on the same day makes an exchange out of one fund of cash in two branches of the same bank for cashier's checks or money orders, this is a single transaction with a single financial institution and the two exchanges should be considered together to require "the bank" to file a CTR covering the transaction.

■ The government's first argument is overbroad. As we have already found in *United States v. Denemark,* 779 F.2d 1559 (1986), the mere fact that an individual has a substantial amount of cash in his possession which he wishes to turn into cashier's checks or other evidence of indebtedness and does so at different banks over a period of days, cannot amount to a crime because his actions amounted to several transactions instead of a single transaction as is contemplated under the statute.

■ However, we have here facts which distinguish this case from *Denemark,* be-

cause here, there were several single transactions on the same day, with the same bank, albeit with different branches of the bank. We agree with the government's contention that such exchanges made by a single person' or his partners or associates in a single day, in different branches of the same bank, do require the bank to file a CTR. This is true, because the statute, under which the regulation is issued, requires the filing of a CTR by a "financial institution" which is defined in the statute as, among other things, "a bank." (31 U.S.C. § 5312(a)(2)). As stated by the district court in *United States v. Sanchez Vazquez,* 585 F.Supp. 990 (N.D.Ga.1984):

> While the regulations do govern when a CTR must be filed, the court disagrees with defendant's interpretation of the term "financial institution." The court believes that the statute, 31 U.S.C. 5312, and the regulations 31 C.F.R. 103.11, must be read together in determining the meaning of the term "financial institution."
>
> The court determines that the correct interpretation of the implementing regulations in defining the term "financial institution" is a bank, including each of its branches. Thus, if the financial institution (i.e., the bank or in particular any of its branches) is aware of its cash transaction in excess of $10,000 on a particular day, the bank or its particular branch must file a CTR. Likewise, if there are multiple cash transactions at different branches of the same financial institution (i.e., bank) which exceed $10,-000, then that particular bank must file a CTR....

Since we do not construe a regulation in a manner that would place it in conflict with the statute by which it is authorized, we construe the regulation here as did the court in *Sanchez Vazquez.*

■ The facts here are much akin to those in *United States v. Tobon-Builes,* 706 F.2d 1092 (11th Cir.1983) and *United*

*States v. Thompson,* 603 F.2d 1200 (5th Cir.1979). In those two cases, a bank was caused to consider as separate transactions, exchanges by or on behalf of a single person at the same time, in the same institution. The only difference here is that the exchanges occurred in different branches of the same bank. We conclude that under the statute and the implementing regulation it was incumbent upon the bank to file a CTR with respect to these transactions which occurred on the same day, and the actions of the appellants in structuring the exchanges by making them in different branches of the same institution and by the use of false names was sufficient to constitute the crime for which they were charged.

We have also considered appellant's argument that the statutory regulatory requirements that banks report currency transactions in excess of $10,000 violates the bank customer's Fourth and Fifth Amendment rights and that the trial court erred in its instruction to the jury as to the existence of *mens rea*. We find no error with respect to the trial court's rejection of these contentions.

The judgments are AFFIRMED.

HILL, Circuit Judge, dissenting:

Contrary to the majority opinion, I find this case controlled by *United States v. Denemark,* 779 F.2d 1559 (11th Cir.1986), as opposed to *United States v. Tobon-Builes,* 706 F.2d 1092 (11th Cir.1983), and thus would reverse the convictions. In *Tobon-Builes,* Tobon and a companion acting on his behalf went to several banks and at each made virtually simultaneous cash purchases of pairs of cashiers checks, each check being for approximately $9000. The couple attempted to conceal their scheme by entering the banks separately and using a variety of false names. Though disguised as two transactions, we held the pairs of purchases in each bank were in fact only one transaction for purposes of the CTR reporting requirement as the purchases of the companion were merely the acts of Tobon through an agent.

Unlike *Tobon-Builes,* in the case before us appellants performed each transaction personally. Appellants can be credited with no transaction at any single branch exceeding $10,000. It is thus impossible for me to conclude that the appellants, who had structured their transactions so as not to become involved in the law requiring currency transactions reports, were put on clear notice that such structuring constituted a conspiracy to defraud the United States in violation of 18 U.S.C. § 371. Our admonition in *Denemark* is equally applicable here. "No one may be required at peril of life, liberty, or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *United States v. Denemark,* 779 F.2d 1559, 1563 (11th Cir. 1986) (quoting *Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939)).

I do not question for a moment that this country is entitled to be, and ought to be, aware of large cash dealings. As I have previously observed, currency is the life blood of organized crime. *United States v. Arends,* 776 F.2d 262, 265 (11th Cir.1985) (Hill, J., specially concurring). What the appellant here has done is clearly contrary to the wishes of the government. However, one of the things which sets this nation apart from so many others is that no one may be convicted of a crime merely for acting contrary to the wishes of the government. Before conduct may be held to constitute a crime, that conduct must be the subject of a criminal statute which "define[s] the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary or discriminatory enforcement." *Kolender v. Lawson,* 461 U.S 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). The applicable Treasury regulations do not satisfy this definiteness requirement with respect to the transactions here in question. Perhaps

the Congress or the Secretary or both ought further to address this problem.[1]

Based upon its particular facts, *Tobon-Builes* is in my view a unique case. As already noted, it was found that at each bank there had been only one cash transaction, involving more than $10,000, accomplished by the defendant acting himself and, simultaneously, through an agent. The transaction at each bank thus should have generated a CTR and Tobon, through his actions, caused each bank to fail to file the required CTRs. *Tobon-Builes* thus constitutes a narrow holding and ought not to be extended to cover separate transactions which were deliberately not covered by the Treasury regulations merely because the separate transactions probably accomplished something contrary to wishes of the Secretary, no matter how beneficial to the country it would be if those wishes were abided.

In *Denemark, supra,* we refused to hold that an individual who had conducted fourteen cash transactions with fourteen different banks during the same day could be pulled within the purview of the CTR reporting requirement by having all the cash transactions considered as a single exchange. In light of the applicable regulatory language cited by the majority, I would apply a similar rule where the transactions occurred at different branches of the same bank. Accordingly, I DISSENT from the majority opinion.

---

**1.** I, recognize that there has been a recent amendment to 31 C.F.R. § 103.22(a) which in the future may or may not be sufficient to pull transactions such as those in this case within the purview of the CTR reporting requirement.