**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Manuel SANCHEZ,**
**Defendant-Appellant.**

No. 84–5914.

United States Court of Appeals,
Eleventh Circuit.

June 11, 1986.

Neal R. Sonnett, Benedict P. Kuehne, Bierman, Sonnett, Shohat & Sale, P.A., Miami, Fla., for defendant-appellant.

Leon B. Kellner, U.S. Atty., Mark Schnapp, David O. Leiwant, Nancy Worthington, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before FAY, Circuit Judge, HENDERSON * and NICHOLS,** Senior Circuit Judges.

PER CURIAM:

Manuel Sanchez appeals his conviction for conspiracy under 18 U.S.C. § 371 in the United States District Court for the Southern District of Florida. Finding no reversible error, we affirm.

In 1981 the Drug Enforcement Agency (DEA) established an investment firm, Dean International Investments, Inc. (Dean), as the front for Operation Swordfish, an investigation into the laundering of drug proceeds in southern Florida. Dean was staffed by DEA agents and informants, and obtained clients through the contacts of these informants. Dean handled its clients' large cash transactions in its corporate name, thereby shielding these dealings from scrutiny by the Internal Revenue Service and other federal law enforcement agencies.

Roberto Darias, a DEA informant employed at Dean, contacted Manuel Sanchez, an assistant vice-president of a Miami bank, in June of 1981. Darias described Dean as an investment firm capable of

---

* See Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Philip Nichols, Jr., Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

handling large cash transactions without disclosing the identity of its clients. He asked Sanchez to refer any bank customers who might need Dean's services. Sanchez met with other Dean employees on July 6, 1981 and had a similar conversation.

A few days later, Lionel Paytubi contacted Sanchez about a client who wanted to exchange a large amount of cash. Paytubi was a former banking associate of Sanchez but had been recently dismissed from his bank job for laundering drug proceeds. Sanchez declined the transactions for his bank, but referred Paytubi to Dean. A meeting took place on July 15, 1981, between Sanchez, Paytubi and Dean employees concerning the proposed transfer of cash. The parties discussed an initial amount of $1,000,000.00 and potential annual transactions of $40,000,000.00. During this and subsequent meetings, Paytubi mentioned that his clients' money probably was derived from the sale of illegal drugs.

Dean transferred $484,000.00 to Panama for one Paytubi client, Marlene Navarro, on August 14, 1981. Sanchez did not participate in this transaction, but did receive a referral commission. Navarro had further dealings with Dean throughout 1981 and 1982, but conducted her business directly with Dean without further participation by Sanchez. She admitted during these later dealings that her money in fact came from the sale of illegal drugs. In October of 1981 Sanchez arranged a cash transfer in which Dean exchanged $395,000.00 for a Miami businessman, Manny Fainstein. Sanchez arranged additional currency exchanges for Fainstein in early 1982, but did not notify Dean of the source of the currency.

Sanchez opened various corporate bank accounts for Dean in 1981 and 1982, all of which were supported by the necessary documentation.

On October 14, 1982, a federal grand jury indicted Sanchez for conspiracy to violate the Travel Act, 18 U.S.C. § 1952, and for a substantive Travel Act violation (the $484,000.00 Navarro transaction). A superseding indictment expanded the conspir-acy charge to include a conspiracy (1) to violate the Travel Act, (2) to circumvent federal currency regulations and (3) to defraud the United States. After a jury trial, Sanchez was convicted of the conspiracy but was acquitted on the substantive Travel Act offense.

Sanchez primarily contends that the evidence was insufficient to sustain the conviction. In reviewing the sufficiency of the evidence, we view it in the light most favorable to the government and must then determine whether a reasonable trier of fact could have reached a conclusion of guilt beyond a reasonable doubt. The evidence need not be wholly inconsistent with every reasonable hypothesis except that of guilt. *United States v. Sanchez*, 722 F.2d 1501, 1505 (11th Cir.), *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984). To support a conspiracy conviction under 18 U.S.C. § 371, the evidence must show the existence of a conspiracy, that the defendant knowingly and voluntarily participated in that conspiracy and that an overt act was committed by at least one coconspirator. *See United States v. Lignarolo*, 770 F.2d 971, 978 n. 9 (11th Cir. 1985). Where the conspiracy charge embraces multiple objectives, the evidence need only support one of the purposes of the conspiracy in order to sustain the conviction. *United States v. Valdes-Guerra*, 758 F.2d 1411, 1414 n. 3 (11th Cir.1985).

Sanchez concedes that a conspiracy existed and does not deny the existence of an overt act. He urges that the government failed to establish his knowing participation in the conspiracy. After reviewing the record, we find sufficient evidence of knowing participation to uphold the conviction for all three objectives of the conspiracy.

The first two goals of the conspiracy were to defraud the United States by impeding the investigation of large currency transfers and to circumvent the currency reporting requirements of 31 U.S.C. §§ 1081–1083 (now codified at 31 U.S.C. § 5313). Since the sole motive for Sanchez's referrals to Dean was to evade these

reporting requirements, we find more than sufficient evidence to support a conspiracy conviction for these objectives. *See United States v. Puerto,* 730 F.2d 627, 630–32 (11th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 162, 83 L.Ed.2d 98 (1984).

■ The third purpose of the conspiracy was to violate the Travel Act, which prohibits the transfer in commerce of the proceeds of illegal activities. Sanchez argues that he had no knowledge about the source of the funds involved in any of the relevant transactions. It is clear, however, that Paytubi revealed to Sanchez that his clients' money was probably drug proceeds and that Sanchez responded that he did not care about the origin of the funds. These statements provide ample proof that Sanchez either knew that the money provided by Paytubi's clients would come from drug sales or that he was deliberately indifferent to the source of these funds. In either case, the evidence was sufficient to establish the Travel Act objective of the conspiracy. *See also United States v. Lignarolo,* 770 F.2d at 978 n. 11.

■ Sanchez next claims that the trial court improperly admitted evidence of a prior money laundering scheme by Paytubi in 1980–81 and of Sanchez's efforts to refer clients to Paytubi. We hold that this evidence was properly admitted under Fed.R. Evid. 404(b) to prove intent, a necessary element of the conspiracy charge. The first conspiracy was similar in time and form to the charged conspiracy and, as such, aided in establishing that Sanchez acted with knowledge that his acts were illegal.

■ Sanchez also contends that the government improperly bolstered Darias's credibility as a witness. *See United States v. Williford,* 764 F.2d 1493, 1502 (11th Cir. 1985). This problem arose when Sanchez cross-examined a DEA agent about Darias's suitability for federal investigative work. On redirect examination, the agent testified that other DEA agents had worked with Darias in prior investigations and found him reliable. We first note that this prohibition of bolstering witness credibility reaches only the prosecutor's conduct and does not apply to government witnesses. *Id.* at 1502–03. Moreover, the purpose of this testimony was not to bolster Darias's credibility, but to justify the DEA's decision to employ him. Sanchez first called attention to the matter on cross examination and the government was entitled to respond to it.

Sanchez finally challenges the fee arrangement between Darias and the DEA as violative of the due process requirements articulated in *Williamson v. United States,* 311 F.2d 441 (5th Cir.1962).[1] Darias was paid a salary during the course of the investigation and was promised and paid a substantial reward at the successful conclusion of the investigation.

■ Contingent fee arrangements with informants do not infringe the dictates of *Williamson* if the fee is contingent on a successful investigation in general, rather than the successful prosecution of a particular individual. *See United States v. Beard,* 761 F.2d 1477, 1480–81 (11th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 239, 88 L.Ed.2d 240 (1985). Since Darias's fee depended on a successful completion of the investigation, we find no due process violation.

The judgment of the district court is AFFIRMED.

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.