**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jacobo CURE, Defendant-Appellant.**

**No. 86–5153.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 17, 1986.

Raymond J. Takiff, Coconut Grove, Fla., for defendant-appellant.

Leon B. Kellner, U.S. Atty., Linda Collins-Hertz, Asst. U.S. Atty., Miami, Fla., Karen Skrivseth, Appellate Section, Criminal Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and GARZA*, Senior Circuit Judge.

PER CURIAM:

## I

## BACKGROUND

On February 8, 1985, appellant Jacobo Cure and four co-defendants were indicted in the United States District Court for the Southern District of Florida on one count of conspiracy to defraud the United States, to make false statements in a government matter, and to fail to file and cause the failure to file Currency Transaction Reports ("CTRs"), in violation of 18 U.S.C.A. § 371; three counts of failing to file CTRs, in violation of 31 U.S.C.A. §§ 5313 and 5322(b), 31 C.F.R. § 103.25, and 18 U.S.C.A. § 2; and six counts of concealing material facts in a matter within the jurisdiction of a government agency, in violation of 18 U.S.C.A. §§ 1001 and 2.

The indictment charged that during the summer of 1984 appellant acted as a money deliverer in an elaborate money laundering scheme that laundered in excess of $1,000,-000. Appellant received cash from co-defendant Alexander Zielcke-Rubio and delivered, or caused to be delivered, that cash to co-defendants Jacques and Maria Luisa Behar. The amount delivered to the Behars at any one time varied between $35,000 and $400,000. Consistent with Zielcke-Rubio's instructions, the Behars employed money

---

* Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

runners who took the cash to various banks and bought cashier's checks and money orders in amounts less than $10,000. However, the total amount of individual checks purchased at branches of a single bank on a single day sometimes exceeded $10,000. These checks generally contained the names of fictitious payees and remitters. The Behars, who received a 3% commission, either delivered these checks to appellant or mailed them to Zielcke-Rubio. No CTRs were filed in any of the transactions.

Appellant filed a timely motion to dismiss the indictment. He alleged that he could not be charged with violating 31 U.S.C.A. § 5313 or 18 U.S.C.A. § 371 because customers of financial institutions have no obligation to file CTRs or to structure their transactions in a manner that requires the filing of a CTR. After the court denied this motion and a subsequent motion to review *de novo* the motion to dismiss, appellant entered a conditional plea agreement pursuant to Fed.R.Crim.P. 11(a)(2), pleading guilty to the conspiracy count, to a single count of failing to file a CTR, and to a single count of concealing material information. Appellant conditioned the plea on his right to appeal the denial of the motion to dismiss the indictment. Appellant was sentenced on the conspiracy count to four years' imprisonment and a $10,000 fine to be followed by two concurrent periods of probation of five years on the failure to file a CTR and concealment counts.

Appellant now appeals the trial court's denial of his motion to dismiss the indictment.

## II

### DISCUSSION

The district court was required to dismiss the indictment if it fails to allege facts that constitute a prosecutable offense. *United States v. Coia*, 719 F.2d 1120, 1123 (11th Cir.1983), *reh'g denied*, 724 F.2d 978, *cert. denied*, 466 U.S. 973, 104 S.Ct. 2349, 80 L.Ed.2d 822 (1984). Appellant contends that the indictment fails to state a crime because, under 31 U.S.C.A. § 5313 and 31 C.F.R. § 103.22, the customers of financial

institutions do not have a duty to file CTRs or to structure their transactions so as to invoke any reporting requirements.

■ Appellant's predicate that bank customers are not required to file CTRs is correct. 31 U.S.C.A. § 5313(a) provides that:

When a domestic financial institution is involved in a transaction for the payment, receipt or transfer of United States coins or currency ... in an amount, denomination, or amount and denomination or under circumstances the Secretary [of the Treasury] prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in a way the Secretary prescribes.

The regulations promulgated by the Secretary merely state, "Each financial institution ... shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution, which involves a transaction in currency of more than $10,-000.00." 31 C.F.R. § 103.22(a). Nothing in the regulations suggests that customers of financial institutions, as participants in a transaction, must file CTRs. Although the Secretary apparently could impose that duty on bank customers, he has declined to do so. Appellant is also correct in arguing that bank customers have no obligation to structure their transactions so as to trigger the reporting requirements of Section 5313. *United States v. Denemark*, 779 F.2d 1559, 1561–64 (11th Cir.1986).

However, appellant's conclusion that his conduct cannot constitute criminal conduct wholly misconceives the nature of the charges against him. The indictment does not simply charge appellant with violation of 31 U.S.C.A. § 5313. It charges him with conspiring with and aiding and abetting a financial institution in order to violate 31 U.S.C.A. § 5313. Although the customer of a financial institution has no obligation to file CTRs, he has no right to assist a financial institution in not filing them. Thus, appellant's participation in both the delivery of cash to the Behars and the subsequent structured transactions with

commercial banks establishes a prosecutable offense.

### A. Liability for the Delivery of Cash to the Behars

Appellant is liable for conspiracy with and aiding and abetting the Behars in failing to file CTRs. The definition of "financial institution" includes "[e]ach agency, branch, or office within the United States of any person doing business ... [as a] bank ... and [a] person who engages as a business in dealing in or exchanging currency...." 31 C.F.R. § 103.11. The definition of "person" includes individuals, unincorporated associations, and partnerships as well as corporations. *Id. See also United States v. Dela Espriella*, 781 F.2d 1432, 1436–37 (9th Cir:1986) (individual can be a financial institution under 31 C.F.R. § 103.11). The indictment charges, and appellant acknowledges, that the Behars acted as a financial institution in accepting funds from him. Because each payment appellant made to the Behars exceeded $10,000, the Behars were required to file a CTR for each payment.

■ The conspiracy statute, 18 U.S.C.A. § 371, subjects to criminal liability two types of conspiracies: conspiracies to defraud the United States and conspiracies to commit an offense against the United States. A conspiracy under this statute has three elements: (1) the existence of an agreement to achieve an unlawful objective; (2) the defendant's knowing and voluntary participation in the conspiracy; and (3) the commission of an overt act in furtherance of the conspiracy. *United States v. Sanchez*, 790 F.2d 1561, 1563 (11th Cir. 1986) (per curiam); *United States v. Lignarolo*, 770 F.2d 971, 978 n. 9 (11th Cir. 1985), *cert. denied*, — U.S. —, 106 S.Ct. 1948, 90 L.Ed.2d 358 (1986). A financial institution's failure to file CTRs is an un-

lawful act and impedes the government's legitimate efforts to collect data on large currency transactions. Therefore, a customer's collusion with a financial institution to avoid filing CTRs that the financial institution has a duty to file constitutes an unlawful conspiracy in violation of 18 U.S.C.A. § 371. *United States v. Sans*, 731 F.2d 1521, 1533–35 (11th Cir.), *reh'g denied sub nom. United States v. Weaner*, 738 F.2d 451 (1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 791, 83 L.Ed.2d 785 (1985); *United States v. Puerto*, 730 F.2d 627, 630–32 (11th Cir.), *cert. denied sub nom. Everett v. United States*, 469 U.S. 847, 105 S.Ct. 162, 83 L.Ed.2d 98 (1984).

■ The indictment contains sufficient facts to establish that appellant conspired with the Behars to avoid the reporting requirement and to defraud the government.[1] Appellant was aware both that the Behars were required to file CTRs and that they never filed any. Furthermore, he actively participated in conduct that encouraged and rewarded the Behars for their unlawful conduct. The subsequent structured transactions further demonstrate appellant's and the Behars' awareness of the reporting requirement and their intent to avoid that requirement in transactions between them. Thus, the indictment states sufficient grounds for a conspiracy in violation of 18 U.S.C.A. § 371.

■ Appellant's involvement with the Behars also makes appellant liable for failing to file CTRs, in violation of 31 U.S.C.A. §§ 5313 and 5322(b) and 31 C.F.R. § 103.-25, and for concealing material facts, in violation of 18 U.S.C.A. § 1001. As 18 U.S.C.A. § 2(a) provides, whoever "aids, abets, counsels, commands, induces or procures" the commission of an offense against the United States is punishable as a principal. The statute goes on to state that whoever "willfully causes an act to be done

---

1. The conspiracy count also lists the falsification by a scheme, trick, or device of material facts in a government matter as an objective of the conspiracy. This matter does not relate to the Behars' failure as a financial institution to file CTRs. Instead, it relates to the subsequent structured transactions with commercial banks. However, if a charged conspiracy embraces multiple objectives, the evidence need support only one of the objectives in order to maintain a conviction. *United States v. Valdes-Guerra*, 758 F.2d 1411, 1414 n. 3 (11th Cir.1985). Therefore the indictment is sufficient as to the conspiracy count even if appellant is not liable for the subsequent structured transactions.

which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C.A. § 2(b). Thus, a person with no duty to file CTRs can be prosecuted under both 31 U.S.C.A. § 5322(b) and 18 U.S.C.A. § 1001 on account of aiding and abetting a financial institution's failure to file CTRs. *United States v. Puerto*, 730 F.2d at 632–34; *United States v. Tobon-Builes*, 706 F.2d 1092, 1099 (11th Cir.1983).

The cases cited by appellant to refute this proposition are inapposite. In *United States v. Anzalone*, 766 F.2d 676, 679–83 (1st Cir.1985), the court held that a bank customer could not be prosecuted under 18 U.S.C.A. § 1001 and 31 U.S.C.A. § 5322. That holding, however, rested on the fact that the bank was not required to file CTRs for the structured transactions involved in that case. Likewise in *Denemark*, 779 F.2d at 1561–64, the court held that a bank customer could not be prosecuted under 18 U.S.C.A. § 1001, but there too the court concluded that the bank was not required to file any CTRs. The courts in both *Dela Esperiella*, 781 F.2d at 1435, and *United States v. Varbel*, 780 F.2d 758, 761–63 (9th Cir.1986), reached this result for the same reason. In this case, however, there is no question that the deliveries of cash to the Behars constituted transactions within the scope of 31 U.S.C.A. § 5313. Therefore, appellant is liable under 18 U.S.C.A. §§ 1001 and 2 and 31 U.S.C.A. § 5322(b).

### B. Liability for the Structured Transactions

■ Appellant is also liable for the transactions in which an agent of the Behars laundered money through commercial banks.[2] The indictment charges that on several occasions the runner bought multiple checks from different branches of the same bank on the same day. Individually these checks were for amounts of less than $10,000 but in aggregate exceeded that amount. The runner also used fictitious names for the remitter and the payee. Appellant concedes that all this was done to avoid having the bank file any CTRs.

It is well established in this Circuit that a bank customer is liable for disguising a transaction such that the bank is unaware of its duty to file a CTR. *United States v. Giancola*, 783 F.2d 1549, 1552–53 (11th Cir. 1986); *Puerto*, 730 F.2d at 632–34; *Tobon-Builes*, 706 F.2d at 1100. In fact, in *Tobon-Builes*, 706 F.2d at 1096–1101, the court held that two bank customers could be convicted for concealment where they made simultaneous purchases of cashier's checks aggregating in excess of $10,000 at the same bank. In that case, the two used false names and disguised the fact that they were operating together. Because their subterfuge prevented the bank from being aware of a transaction it was required to report, they were liable under 18 U.S.C.A. § 1001. Similarly, the subterfuge used by the runner here suffices to establish appellant's liability for both concealment and conspiracy.

Liability, however, depends on whether the bank was required to file a CTR, for, as previously mentioned, a bank customer is not liable merely for structuring his cash transactions so as to create transactions in which the filing of a CTR is not required. *Denemark*, 779 F.2d at 1561–64. The banks here were required to file CTRs. In *Giancola*, 783 F.2d at 1552–53, the court squarely held that the purchase of multiple cashier's checks in an aggregate amount of more than $10,000 from different branches of the same bank on the same day constitutes a single transaction in excess of $10,-000. This holding derived from both *Tobon-Builes*, 706 F.2d at 1098, and *United States v. Thompson*, 603 F.2d 1200, 1204 (5th Cir.1979), in which the court aggregated transactions at a single branch of a bank on a single day to find a single transaction in excess of $10,000. The court in *Giancola* read the definition of "financial institution" as treating all the branches of a bank as a single financial institution; therefore, transactions that occurred in the

---

**2.** That the runner who purchased the money orders was a government informant is without effect. *See, e.g., United States v. Goldberg*, 756 F.2d 949, 958 (2d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 2706, 86 L.Ed.2d 721 (1985); *United States v. Seelig*, 498 F.2d 109, 113 (5th Cir.1974). Appellant does not, and could not, make out a claim for entrapment.

branches of a single bank could be aggregated into a single transaction.[3] Although the runner also bought cashier's checks at branches of different banks, the indictment is sufficient in that it sets forth at least some transactions in which the banks were required to file CTRs. Appellant is liable for deliberately causing the bank to fail to fulfill its reporting duty in those transactions.

We also reject appellant's contention that treating the multiple transactions in this case as a single transaction violates his rights under the Fifth Amendment. The Fifth Amendment requires that penal statutes be sufficiently definite so as to put persons of ordinary intelligence on notice as to what constitutes prohibited conduct. *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). The law of this Circuit is clear that multiple transactions at different branches of the same bank constitute a single transaction. The law is also clear that using fraudulent means to conceal a transaction for which a bank must file a CTR is unlawful. In fact, the court in *Giancola,* 783 F.2d at 1553, rejected a similar Fifth Amendment challenge made by the defendant in that case.

Appellant points to the Secretary of the Treasury's recently proposed revisions for 31 C.F.R. § 103.22 which make explicit a financial institution's obligation to file CTRs when multiple transactions in a single day exceed $10,000. These proposed revisions, appellant argues, prove that the current regulations provided inadequate notice that his conduct was unlawful. Although the revisions concern mostly transactions occurring at different financial institutions, they also require aggregating transactions that occur within a single financial institution. Whether these proposals would change the law in other circuits or expand liability in this Circuit we need not say, for their treatment of multiple transactions within a single financial institution complies with the existing law of this Circuit. Thus, appellant cannot complain of a lack of notice. On the contrary, appellant, who was aware of the reporting requirements imposed on financial institutions, "was finagling, with the improper hope that the bank would fail to notice its duty." *Anzalone,* 766 F.2d at 684 (Aldrich, Senior J., concurring).

Accordingly, the opinion of the district court is AFFIRMED.

---

**3.** The holding in *Giancola* did not rest in any way on the language of Internal Revenue Service Form 4789, the form which the government provides financial institutions for reporting cash transactions. The instructions accompanying IRS Form 4789 state, "Multiple transactions by or for any person which in any one day total more than $10,000.00 should be treated as a single transaction if the financial institution is aware of them." These instructions appear to aggregate transactions occurring in different financial institutions on a single day. However, because the transactions in this case occurred within a single financial institution, this Court need not decide whether the instructions accompanying IRS Form 4789 are binding on financial institutions.