UNITED STATES of America,
Plaintiff–Appellee,

v.

Carlos LAFAURIE,
Defendant–Appellant.

No. 86–5785.

United States Court of Appeals,
Eleventh Circuit.

Dec. 14, 1987.

---

Bailey, Gerstein, Rashkind & Dresnick, Paul M. Rashkind, F. Lee Bailey, Miami, Fla., for defendant-appellant.

Leon B. Kellner, U.S. Atty., Bruce L. Udolf, Mayra Reyler Lichter, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before JOHNSON and EDMONDSON, Circuit Judges, and HOFFMAN,* Senior District Judge.

---

\* Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

1. Gutierrez forfeited bond and is currently a fugitive. Yurubi pled guilty to the first three counts of the indictment. Yurubi would appear as a government witness against Lafaurie.

2. Yurubi had set up his own money laundering operation after the Jacques Behar money laun-

JOHNSON, Circuit Judge:

Carlos Lafaurie moved to dismiss his indictment charging conspiracy for failure to allege a criminal offense. The United States District Court for the Southern District of Florida denied his motion. We affirm.

## I.

Lafaurie, Edgardo Gutierrez, and Gilberto Yurubi[1] were indicted on one count of conspiracy (violating 18 U.S.C.A. § 371) and 30 counts of violating 18 U.S.C.A. § 1001. The charges stem from an attempt not to trigger the requirement that financial institutions file Currency Transaction Reports (CTRs) for currency transactions exceeding $10,000. 31 U.S.C.A. § 5313; 31 C.F.R. § 103.22(a).

An Offer of Proof (stipulated by the parties before the district court) indicated that Yurubi had set up a money laundering operation. Lafaurie would pay Yurubi's organization a commission of 3% of the gross amounts received in return for converting the currency into cashier's checks and money orders, both in amounts under $10,000. Lafaurie did not give Yurubi specific instructions concerning the filing or nonfiling of CTRs, at which banks to buy, or when to buy. Yurubi would testify that avoiding CTRs was "understood" and needed no discussion.[2]

Yurubi's "runners" went to different banks, converting the cash to cashier's checks and money orders. One "runner" was a government informant; the other was a government agent introduced into the Yurubi organization by the government informant. In the course of four months,

dering operation terminated its relationship with Yurubi. *See United States v. Cure,* 804 F.2d 625 (11th Cir.1986) (per curiam) (discussing Behar organization). Although not charged in the indictment at issue here, Yurubi knew that the Behar organization had laundered money for Lafaurie on at least one occasion. In addition, the government informant in the present case had worked with the Behar organization.

Yurubi's organization laundered $4.5 million for Lafaurie.[3]

Yurubi told the government informant that his clients preferred money orders, because money orders, unlike cashier's checks, could be purchased without naming any payee, thus leaving the client free to direct them in any way he wished. To launder the $4.5 million, the runners purchased over 700 cashier's checks and money orders (all but approximately 85 were money orders) with each cashier's check or money order in an amount of less than $10,000. The cashier's checks and money orders could be deposited in any aggregate amount without a need for CTRs because CTRs are required only for cash transactions.

The vast majority of cashier's checks and money orders were sent by Lafaurie either to an account at the Credit Swisse Bank in Switzerland, or to an account at the Banco Occidente in Panama. Both accounts were controlled by Lafaurie. In addition, the vast majority of the money orders listed "C. Lafaurie" as sender. Many times, the aggregate total of money orders listing "C. Lafaurie" as sender and purchased on the same date at the same or different branches of a bank exceeded $10,000.[4]

CTRs were not properly filed by the various financial institutions at which the cashier's checks and money orders were purchased. Although the cashier's checks and money orders were all purchased by undercover government agents, none of the financial institutions was instructed by the government not to file CTRs.

Lafaurie moved to dismiss the indictment, but the magistrate entered an order recommending denial of the motions. Lafaurie then requested *de novo* consideration of his motions in the district court. The district court adopted the magistrate's recommendations.

Lafaurie then entered a conditional guilty plea pursuant to Fed.R.Crim.P. 11(a)(2), reserving his right to appeal the district court's order. The underlying plea agreement required the government to dismiss the last 30 substantive counts. The district court adjudicated Lafaurie guilty on the conspiracy charge, sentencing him to two years in prison and fining him $250,000. Lafaurie then filed this timely appeal against the conspiracy charge.

## II.

In order to establish a conspiracy, the government must show (1) an agreement to achieve an illegal objective (i.e., either to commit an offense against the United States, or to defraud the United States or one of its agencies); (2) the defendant knowingly and voluntarily participated in the conspiracy, and (3) the commission of an overt act in furtherance of the conspiracy by one of the co-conspirators. *United States v. Sanchez,* 790 F.2d 1561, 1563 (11th Cir.1986).

The stipulated Offer of Proof shows that the latter two prongs are easily met. First, Lafaurie knowingly and voluntarily entered into an agreement with Yurubi for Yurubi to launder Lafaurie's cash. Second, numerous overt acts were undertaken by Lafaurie and Yurubi. The present appeal thus focuses on whether the agreement had an illegal objective. Lafaurie argues that the indictment charges no crime against the United States because it is not illegal to structure currency transactions in a way that banks need not file CTRs.

Lafaurie is certainly correct that it is not illegal to so structure currency transactions. *United States v. Denemark,* 779 F.2d 1559 (11th Cir.1986).[5] Lafaurie's ar-

---

**3.** Yurubi usually received the cash to be laundered from Gutierrez, Lafaurie's associate.

**4.** Although by no means exhaustive, examples include: (1) $19,000 from Amerifirst on 9/21/84; (2) $58,000 from Amerifirst on 10/02/84; (3) $16,000 from Southeast on 10/02/84; (4) $33,000 from Florida National on 10/02/84; (5) $16,000 from Amerifirst on

10/03/84; (6) $37,000 from Amerifirst on 10/04/84; and (7) $24,000 from Florida National on 10/04/84.

**5.** In *Denemark* the Court held that a bank was not required to file a CTR where the defendant, using several different names, went to 14 different banks and purchased cashier's checks for $9,900 each.

gument, however, is without merit. As this Court noted in *United States v. Cure*, 804 F.2d 625, 629 (11th Cir.1986) (per curiam), "[l]iability ... depends on whether the bank was required to file a CTR, for ... a bank customer is not liable merely for structuring his cash transactions so as to create transactions in which the filing of a CTR is not required."

■ A bank must file a CTR if currency exchanges totalling more than $10,000 are made by a single person or his partners or associates in a single day either in different branches of the same bank, *id.* at 629–30; *United States v. Giancola*, 783 F.2d 1549, 1552 (11th Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 669, 93 L.Ed.2d 721 (1986), or at the same branch of a bank. *United States v. Tobon–Builes*, 706 F.2d 1092 (11th Cir. 1983); *United States v. Thompson*, 603 F.2d 1200 (5th Cir.1979).

■ The record clearly establishes that some purchases in the present case triggered a bank's duty to file a CTR. *See supra* note 4 and accompanying text. A conspiracy to cause a bank to fail to file CTRs is a conspiracy to defraud the United States in violation of Section 371. *See, e.g., Giancola, supra,* 783 F.2d 1549. The indictment thus is sufficient to charge a violation of Section 371.

Although admitting that some transactions triggered the CTR requirement, Lafaurie argues that *he* did not seek an illegal objective. In its order denying the defend-ant's motion to dismiss the indictment, the district court wrote that

[a]s is also stated in the Offer [of Proof], between September, 1984 and the end of January, 1985, the money laundering organization laundered approximately $4,500,000.00 for the Defendant. To that end, over 700 cashier's checks and money orders were purchased at approximately six different financial institutions by government agents *acting at the direction of* the money laundering operation.

*United States v. Lafaurie*, No. 85–00079, slip op. at 3 (S.D. Fla. May 23, 1986) (emphasis added). Lafaurie argues that the district court's factual finding that the agents "acted at the direction of" the money laundering operation was clearly erroneous.

Lafaurie claims that he and Yurubi intended the laundering transactions to be structured so that no bank was required to file a CTR. Lafaurie argues that the government informant and the government agent (the "runners") did not follow Yurubi's instructions and laundered currency in such a way that a bank was required to file a CTR. Lafaurie thus contends that but for the government informant's and the government agent's disregarding Yurubi's instructions, *Denemark* would protect the money laundering activities.[6] Lafaurie focuses on Yurubi telling the government agent not to "go to the same bank twice in a week." The government argues the conversation is more of a warning to avoid arousing suspicion than an instruction.[7]

---

6. We do not view Lafaurie as arguing that the mere presence of the government informant and the government agent would destroy the conspiracy. This Court in *Cure* approvingly cited cases standing for the proposition that the presence of a government agent does not destroy a conspiracy in which at least two other private individuals have agreed to engage in an unlawful adventure. 804 F.2d at 629 n. 2. In the present case, Lafaurie, Gutierrez, and Yurubi were involved in the alleged conspiracy.

7. The conversation states in relevant part (blanks and question mark appear as in the transcript; "Mike" is the "runner" and a government agent):

MIKE: Naturally. I believe that in any case it's always better to deversify [sic] to use the same banks as little as possible even though one has to travel more.

YURUBI: No. You have to do it. Herb doesn't go to the same bank in one week. If you go to the same bank twice in a week and they'll report you. You must have gone to that bank already this week.

MIKE: It's possible. I try to do the same as Herb but it's possible. I had to go there Monday or Tuesday.

YURUBI: I mean to the same teller.

MIKE: Well you can't choose your teller. You get in line and

YURUBI: ?

MIKE: Oh yeah? but I mean, once you're in line you cannot choose which teller you'll get.

YURUBI: No. But you must be careful that there aren't any more of those papers. If they get one they won't say anything but if ten of them come in....

We hold that the district court's finding that the "government agents act[ed] at the direction of the money laundering operation" is not clearly erroneous for at least two independent reasons. First, the conversation set forth in note 7 upon which Lafaurie bases his argument is capable of interpretation as a warning to avoid arousing suspicion, and thus the district court's finding was not clearly erroneous. Indeed, the "runners" consistently purchased cashier's checks and money orders from the same banks before and after this conversation and did so without correction from Yurubi and Lafaurie. Second, even if the conversation could be construed as an instruction, the conversation occurred in December 1984. This conversation did not take place until three months into the conspiracy, after 588 of the currency transactions had already been consummated. Lafaurie had sent money orders clearly requiring a bank to file a CTR, see supra note 4 and accompanying text, to his accounts in Switzerland and Panama, and never informed Yurubi to structure the laundering transactions in any other manner.[8]

Consequently, the district court properly denied Lafaurie's motion to dismiss his indictment. The indictment and Offer of Proof demonstrate that Lafaurie participated in a conspiracy to prevent banks from fulfilling their requirement of filing CTRs. Accordingly, we AFFIRM the district court.[9]

MIKE: Un hum. That's when there'll be an investigation. Well from now on I'll be careful not to visit any banks twice in one week.

8. Lafaurie makes three additional unavailing arguments. First, he argues that, because officers in some banks were made aware that the transactions were part of an undercover operation, he cannot be held responsible for their subsequent failure to file CTRs. Even assuming that some banks eventually learned of the government investigation, no instructions were given to any of the banks at any time concerning the filing of CTRs and the vast majority of checks and money orders were purchased before any bank officers knew that a government investigation was being conducted.

Second, Lafaurie claims that, rather than follow this Court's decisions of Tobon–Builes and its progeny, we should follow decisions from the First and Ninth circuits. This Court specifically rejected the analogy to these cases in Cure, 804 F.2d at 629. In addition, a panel of this Court cannot overrule another prior panel decision of this Court.

Third, Lafaurie argues that holding him criminally liable violates his constitutional right to fair warning. This Court rejected this argument in Cure. Id. at 630.

9. Because of our conclusion, we express no view as to whether Yurubi, as an individual, could be described as a "financial institution," and thus subject to the CTR requirement.