United States Court of Appeals,

Eleventh Circuit.

No. 94-8778.

UNITED STATES of America, Plaintiff-Appellee,

v.

C. Wayne PHIPPS, Defendant-Appellant.

April 25, 1996.

Appeal from the United States District Court for the Northern District of Georgia. (No. 4:93-CR-033-01-HLM), Harold L. Murphy, Judge.

Before TJOFLAT, Chief Judge, CARNES, Circuit Judge, and FAY, Senior Circuit Judge.

CARNES, Circuit Judge:

This appeal arises out of the conviction of C. Wayne Phipps for three counts of money laundering in violation of 18 U.S.C. § 1956(a)(3)(B), and for two counts of causing a financial institution to fail to file a Currency Transaction Report ("CTR") in violation of 31 U.S.C. § 5324(a)(1). Phipps attacks his convictions on several grounds; however, the only issue that merits discussion is one involving the § 5324(a)(1) counts.[1] The parties phrase the issue as one of sufficiency of the evidence to convict on the two § 5324(a)(1) counts, but the facts the jury could find from the evidence are not really in dispute. The real issue is whether 31 U.S.C. § 5324(a)(1), which prohibits any person from "caus[ing] or attempt[ing] to cause a domestic financial

---

[1] Having reviewed the record, we reject without further discussion Phipps' contentions concerning the district court's imposition of a two-point sentence enhancement for obstruction of justice, the district court's entrapment instruction, and several of the district court's evidentiary rulings.

institution to fail to file a report required" under applicable currency transaction reporting statutes and regulations is violated by structuring activities designed to avoid a CTR being required in the first place. 31 U.S.C.A. § 5324(a)(1) (West 1995).

For the reasons that follow, we answer that question in the negative and hold that § 5324(a)(1), unlike certain other statutory provisions, is violated only when the financial institution is required to file a report that the defendant causes or attempts to cause it not to file. As a result, Phipps' conviction is due to be reversed insofar as the § 5324(a)(1) counts are concerned.

## I. FACTS AND PROCEDURAL HISTORY

On four occasions in the spring of 1992, Phipps exchanged cash supplied by a government informant, James McMillan, for checks drawn on Phipps' bank account and for cashier's checks that Phipps purchased with money from his bank account. Phipps never deposited or exchanged McMillan's cash directly with his bank. Instead, Phipps would give the cash to Charles Prater, a friend who operated Carpet Transport, Inc. ("CTI"), and Prater would give Phipps checks made out to CTI which Prater had endorsed and signed over to Phipps. Phipps would then take these third-party checks to his bank, deposit them in his account, and write checks to McMillan, or purchase cashier's checks, for an amount ten percent less than the amount of cash that McMillan had supplied to Phipps. That ten percent deduction represented Phipps' "commission" for handling the transaction.

Pursuant to this scheme, there were four separate sets of transactions in which Phipps exchanged currency totalling

$40,000.00 for CTI checks totalling approximately $39,000.00. Phipps then deposited those CTI checks into the bank and wrote checks (or purchased cashier's checks) totalling $36,000.00 payable to McMillan. While the details varied somewhat, the pattern was the same each time. The reason the transactions were structured in this manner was to launder or disguise the source of the currency, which supposedly was from illegal drug activities, and to do it in a way that would avoid the bank being required to file any CTRs. The bank was never required as a result of these transactions to file any CTRs, because only checks were deposited in the bank, no currency.

For his involvement in these transactions, Phipps was charged with four counts of money laundering in violation of 18 U.S.C. § 1956(a)(3)(B), and two counts of causing a financial institution to fail to file a CTR as required by 31 U.S.C. § 5313(a), in violation of 31 U.S.C. § 5324(a)(1). In addition, the government sought forfeiture of Phipps' proceeds from the transactions pursuant to 18 U.S.C. § 982. A jury found Phipps guilty of three of the four counts of money laundering, and of the two counts of causing a financial institution to fail to file a CTR. After his conviction, Phipps moved pursuant to Fed.R.Crim.P. 29(c) for a judgment of acquittal, and the district court denied the motion. Thereafter Phipps consented to forfeiting $3,500.00 to the government.

## II. DISCUSSION

Phipps argues that the district court erred in denying his Rule 29(c) motion for judgment of acquittal because there was insufficient evidence as a matter of law to support his conviction

for causing a financial institution to fail to file a CTR. Phipps does not dispute the facts that the government proved at trial concerning his involvement in the money laundering transactions; instead, he contends that those facts do not establish a violation of 31 U.S.C. § 5324(a)(1). We review the district court's interpretation of the relevant statutory provision and its application of law to facts *de novo*. *E.g., United States v. Thomas,* 62 F.3d 1332, 1336 (11th Cir.1995); *Rodriguez v. Lamer,* 60 F.3d 745, 747 (11th Cir.1995).

A. The Currency Transaction Reporting Requirements

In 1970, in an effort to facilitate the investigation of criminal activity, Congress passed legislation requiring banks to report to the government certain large currency transactions. Section 5313(a) of the Bank Secrecy Act, 31 U.S.C. § 101 *et seq.,* provides, in pertinent part:

> When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or other monetary instruments the Secretary of the Treasury prescribes), in an amount, denomination, or amount and denomination ... the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes.

31 U.S.C.A. § 5313(a) (West 1983). If the financial institution fails to file a CTR when the obligation arises, the institution is subject to criminal penalties. 31 U.S.C. § 5322.

Pursuant to the authority granted under § 5313(a), the Secretary of the Treasury promulgated regulations specifying the kinds of transactions that must be reported to the government:

> Each financial institution other than a casino or the Postal Service shall file a report of each deposit, withdrawal,

exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000.

31 C.F.R. § 103.22 (1995). Thus, although under § 5313(a) the Secretary could have required "any other participant in the transaction" to file a report, 31 U.S.C.A. § 5313(a) (West 1983), the Secretary imposed that obligation only on the financial institution. In addition, although under § 5313(a) the Secretary could have required transactions involving "other monetary instruments" to be reported, the Secretary required only transactions in currency to be reported.

The regulations define "a transaction in currency" as "[a] transaction involving the physical transfer of currency from one person to another." 31 C.F.R. § 103.11(ii) (1995). The regulations further provide: "A transaction which is a transfer of funds by means of bank check, bank draft, wire transfer, or other written order, and which does not include the physical transfer of currency is not a transaction in currency within the meaning of this part." 31 C.F.R. § 103.11(ii) (1995). "Currency" is defined in the regulations as "[t]he coin and paper money of the United States or of any other country that is designated as legal tender and that circulates and is customarily used and accepted as a medium of exchange in the country of issuance." 31 C.F.R. § 103.11(h) (1995).

B. Section 5324(a)—The 1986 Amendments to the Bank Secrecy Act

Congress amended the Bank Secrecy Act in 1986 to impose criminal liability on any person who: (1) causes a financial institution to fail to file a CTR; (2) causes it to report false

information on a CTR;  or (3) structures transactions in an attempt to evade the CTR reporting requirement.  That 1986 legislation is codified as 31 U.S.C. § 5324(a), which provides in its entirety, as follows:

> No person shall for the purpose of evading the reporting requirements of section 5313(a) or 5325 or any regulation prescribed under any such section—
>
> > (1) cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313(a) or 5325 or any regulation prescribed under such section [;]
> >
> > (2) cause or attempt to cause a domestic financial institution to file a report required under section 5313(a) or 5325 or any regulation prescribed under any such section that contains a material omission or misstatement of fact;  or
> >
> > (3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

31 U.S.C.A § 5324(a) (West Supp.1995).  Phipps was not charged with violating the third subdivision of § 5324(a), only the first subdivision.  Therefore, we need not address whether the evidence in this case could establish a violation of the antistructuring provision in § 5324(a)(3).

C. The Competing Interpretations of § 5324(a)(1)

There are two competing interpretations of the key language in § 5324(a)(1) about "caus[ing] a domestic financial institution to fail to file a report required" under the applicable statutory and regulatory provisions.  Phipps would have us interpret that key language in § 5324(a)(1) as applying only when a bank is required to file a currency transaction report.  In other words, it would prohibit a defendant from causing or attempting to cause—through cajolery, bribery, intimidation, or whatever means—a bank from

complying with its legal duty to file a CTR. Under Phipps' interpretation, there can be no violation of § 5324(a)(1) unless and until a CTR is required to be filed, and that cannot happen when no currency is deposited or exchanged with the financial institution.

The government would have us read § 5324(a)(1) differently. Under the government's interpretation, the provision would cover a defendant's actions causing or attempting to cause the bank not to have to file the report in the first place. In other words, the government urges us to extend § 5324(a)(1) to structuring activities that are designed to cause a bank not to have to file a CTR that would have been required but for the structuring.

D. The Proper Interpretation of § 5324(a)(1)

There are three obstacles to the government's expansive interpretation of § 5324(a)(1), which taken together are insurmountable. The first obstacle is the plain language of the provision itself. That language clearly says that what is proscribed is causing or attempting to cause the bank not to file "a report required" under the applicable CTR statutes and regulations. It does not say that what is proscribed is structuring transactions so that the bank is not required to file a CTR to begin with.

"[I]n determining the scope of a statute, one is to look first at its language. If the language is unambiguous, ... it is to be regarded as conclusive unless there is a clearly expressed legislative intent to the contrary." *Dickerson v. New Banner Inst., Inc.,* 460 U.S. 103, 110, 103 S.Ct. 986, 990, 74 L.Ed.2d 845

(1983) (citations and quotation marks omitted). Moreover, it is well settled that criminal laws are to be strictly construed. *United States v. Enmons,* 410 U.S. 396, 411, 93 S.Ct. 1007, 1015, 35 L.Ed.2d 279 (1973); *United States v. Campos-Serrano,* 404 U.S. 293, 297, 92 S.Ct. 471, 474, 30 L.Ed.2d 457 (1971); *United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971). Because there is no qualification in the language of the statute itself, we should read "a report required" to mean what it says. That is, we should read "a report required" in § 5324(a)(1) to mean a report that the financial institution is obligated to file, which is what "required" means, not a report that it *would have been* obligated to file had circumstances been different.

The second obstacle to the government's expansive interpretation of § 5324(a)(1) is that it would render § 5324(a)(3) entirely superfluous. If we adopted the government's view, every violation of the antistructuring provision in the third subdivision of § 5324(a) would also be a violation of the first subdivision; there would be no need for § 5324(a)(3). It is a basic tenet of statutory construction that courts should refrain from construing a statutory provision in a way that renders meaningless another provision within the same statute. *See Ratzlaf v. United States,* --- U.S. ----, ----, 114 S.Ct. 655, 659, 126 L.Ed.2d 615 (1994); *Pennsylvania Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 562, 110 S.Ct. 2126, 2133, 109 L.Ed.2d 588 (1990); *Lohr v. Medtronic, Inc.,* 56 F.3d 1335, 1344 (11th Cir.1995), *cert. granted,* --- U.S. ----, 116 S.Ct. 806, 133 L.Ed.2d 752 (1996).

The third obstacle to the government's interpretation is the

legislative history of § 5324, which clearly shows that § 5324(a)(1) was aimed only at non-structuring situations.

Prior to the enactment of § 5324, a number of federal courts of appeals' decisions addressed whether and under what circumstances individuals unaffiliated with the financial institution that was involved in a currency transaction could be held criminally liable for causing the institution not to file a CTR. Some decisions had held that an individual could be held criminally liable for causing a financial institution to fail to file a CTR that it had a legal duty to file, *see United States v. Lafaurie,* 833 F.2d 1468, 1470-71 (11th Cir.1987), *cert. denied,* 486 U.S. 1032, 108 S.Ct. 2015, 100 L.Ed.2d 602 (1988); *United States v. Hayes,* 827 F.2d 469, 472 (9th Cir.1987); *United States v. Cure,* 804 F.2d 625, 629 (11th Cir.1986); *United States v. Tobon-Builes,* 706 F.2d 1092, 1100-01 (11th Cir.1983), but other decisions also had held that an individual could not be held criminally liable for structuring transactions to avoid triggering the bank's duty to file a CTR in the first place, *see United States v. Gimbel,* 830 F.2d 621, 625-26 (7th Cir.1987); *United States v. Larson,* 796 F.2d 244, 247 (8th Cir.1986); *United States v. Dela Espriella,* 781 F.2d 1432, 1435 (9th Cir.1986); *United States v. Denemark,* 779 F.2d 1559, 1563 (11th Cir.1986); *United States v. Varbel,* 780 F.2d 758, 762 (9th Cir.1986); *United States v. Anzalone,* 766 F.2d 676, 683 (1st Cir.1985); *but see United States v. Richeson,* 825 F.2d 17, 20 (4th Cir.1987) (holding individual criminally liable for structuring to avoid reporting requirements).

Congress enacted § 5324 to ensure that individuals would be

held criminally liable in both situations. As the Senate report accompanying the legislation made clear, one subdivision of the provision (which would become § 5324(a)(1)) was aimed at efforts to prevent a CTR which was required from being filed while another (which would become § 5324(a)(3)) was aimed at structuring to avoid the CTR requirements from being applicable. The Senate report explained:

> [The proposed amendment to 31 U.S.C. § 5313(a) ] would codify *Tobon-Builes* and like cases and would negate the effect of *Anzalone, Varbel* and *Denemark.* It would expressly subject to potential liability a person who causes or attempts to cause a financial institution to fail to file a required report.... In addition, the proposed amendment would create the offense of structuring a transaction to evade the reporting requirements, without regard for whether an individual transaction is, itself, reportable under the Bank Secrecy Act.

S.Rep. No. 433, 99th Cong., 2d Sess. 22 (1986). A Justice Department official explained to Congress:

> [The amendment] addresses the problem of "structured" currency transactions. That is, currency transactions which are intentionally broken down into a series of smaller transactions, each under $10,000, for the purpose of evading the reporting requirements of the Bank Secrecy Act. This process, commonly known as "smurfing," is undertaken by individuals or groups of individuals who, intending to prevent banks from reporting their currency transactions, engage in a series of cash transactions each under $10,000 at different banks on different days, different banks on the same day, or at the same bank, or its branches, on different days.

*The Drug Money Seizure Act and the Bank Secrecy Act Amendments: Hearing on S. 571 and S. 2306 Before the Senate Comm. on Banking, Housing, and Urban Affairs,* 99th Cong., 2d Sess. 66-67 (1986) (statement of James Knapp, Deputy Asst. Attorney General). That was what the part of the legislation that would become § 5324(a)(3) was designed to do. As to the part that would become § 5324(a)(1), the Justice Department official explained that:

> [The amendment] would also prohibit persons from ... causing or attempting to cause the institution to fail entirely in its duty to report currency transactions.... This new language is, in part, a restatement of the law of causation found in 18 U.S.C. § 2(b) and 31 U.S.C. § 5313.... This restatement of the applicability of 18 U.S.C. § 2(b) and 1001 to the Bank Secrecy Act was believed necessary following the decision of the First Circuit in *Anzalone*.... Certain language in that opinion and other cases ... may be read as questioning whether an individual having no duty to report currency transactions may be held criminally liable for causing a domestic financial institution, *which has such a duty,* to fail to file reports of currency transactions.

*Id.* at 67 (emphasis added).

A bank's duty to file a CTR only arises when a person engages in a cash transaction of more than $10,000.00 in a single day. *Anzalone, Varbel,* and *Denemark* all involved situations where the defendant had structured currency transactions with the bank so that the bank never had a duty to report the transactions. To negate the effect of those cases, Congress created the crime of structuring, codified in § 5324(a)(3), which operates "without regard for whether an individual transaction is, itself reportable under the Bank Secrecy Act." S.Rep. No. 433, 99th Cong., 2d Sess. 22 (1986). In contrast, the above quoted passages from the legislative history make it clear that the crime of "causing a financial institution to fail to file a CTR" is a restatement of existing criminal causation liability, which prior to the addition of § 5324(a) had been prosecuted under 18 U.S.C. § 2(b). *Tobon-Builes,* the Eleventh Circuit case that Congress sought to codify in § 5324(a)(1), involved transactions that *did* trigger the bank's obligation to file a CTR, thus subjecting the defendant to criminal liability under 18 U.S.C. § 2(b) for causing the bank's failure to do so. 706 F.2d at 1098, 1101.

As this Court made clear in *Tobon-Builes,* causation liability under 18 U.S.C. § 2(b) depends on the defendant's causing another to commit a crime. *Id.* at 1099 ("it is well established that § 2(b) was designed to impose criminal liability on one who causes an intermediary to commit a criminal act"); *see also Cure,* 804 F.2d at 629 (noting that courts holding individuals not liable for causing a bank to fail to file CTR did so the because bank never had an obligation to file a CTR, whereas in that case the bank did have such an obligation, so the defendant was criminally liable under 18 U.S.C. § 2(b)). Thus, the legislative history of § 5324 makes it clear that an individual must engage in a currency transaction with the bank that triggers the bank's legal duty to file a CTR before that individual may be held criminally liable under § 5324(a)(1) for causing the bank's failure to file. Because the bank in this case never had a legal duty to file a CTR, Phipps may not be held criminally liable under § 5324(a)(1).

In summary, the plain language of the provision, principles of statutory construction, and legislative history all compel the conclusion that § 5324(a)(1) is violated only when an individual causes a financial institution not to file a CTR that it had a legal duty to file. The government concedes that the bank in this case was never obligated to file a CTR. We hold, therefore, that the evidence presented by the government was insufficient as a matter of law to establish a violation of 31 U.S.C. § 5324(a)(1). Accordingly, the district court erred in not granting Phipps' Rule 29 motion for judgment of acquittal on the two counts charging Phipps with violating that statutory provision. However, because

the conduct Phipps engaged in does constitute money laundering in violation of 18 U.S.C. § 1956(a)(3)(B), we affirm Phipps' conviction on the counts charging him with a violation of that statutory provision.

### III. CONCLUSION

For the foregoing reasons, we REVERSE Phipps' convictions under 31 U.S.C. § 5324(a)(1) for causing a financial institution to fail to file a CTR, AFFIRM Phipps' convictions under 18 U.S.C. § 1956(a)(3)(B) for money laundering, VACATE Phipps' sentence, and REMAND to the district court for resentencing.