ROSENBAUM, Circuit Judge,
concurring in part and dissenting in part.
During oral argument in this case, the Court, in effect, asked counsel for the government whether a salaried person who earned $9,000 a week and deposited it in cash weekly, intending at least in part to evade the reporting requirement, committed the crime of structuring under 31 U.S.C. § 5324(a)(3). The government suggested that such a person did. Today the Court embraces this construction of § 5324(a)(3) as the law.
Granted, most of us do not have the problem of trying to figure out what to do with our $9,000-per-week salary, but this same logic applies to any weekly salary payment under $10,000. And it does not end with weekly salary payments. As a result of today’s ruling, in this Circuit, no matter how small a sum of money a person may possess or otherwise enjoy a right to eontrol-^even if only a few dollars — he may find himself facing structuring charges if he goes to the bank often enough to create the appearance to the government of engaging in a pattern of fínanciál transactions of $10,000 or less. I suppose that we will discover in the coming years how frequent a bank visitor one must be to imperil himself, but, in any case, it is clear today that § 5324(a)(3) has taken on a far broader reach than Congress ever intended.
I.
A. Congress Did Not Intend for the . Anti-structuring Statute to Cover Transactions Where the Person Did Not Have Control of At Least $10,000
Beginning, as we must, with the statutory language, see CBS Inc. v. PrimeTime 24 Joint Venture, 245 F.3d 1217, 1222 (11th Cir.2001), § 5324 states, in relevant part, that “[n]o person shall, for the purpose of evading the reporting requirements ... (3) structure ..., or attempt to structure ... any transaction with one or more domestic financial institutions.” 31 U.S.C. § 5324(a)(3). In the past, we have said that the language “ ‘for the purpose of evading’ the reporting requirements” means that “the structured transaction must involve an amount that is more than $10,000; otherwise, evasion would not be necessary or possible because there would be no reporting requirement anyway.”[1] *1130 See United States v. Lang, 732 F.3d 1246, 1248 (11th Cir.2013) (discussing the same language in 31 C.F.R. § 1010.100(xx)); see also United States v. Aunspaugh,[2] 792 *1131 F.3d 1302, 1311 (11th Cir.2015) (“To constitute structuring, a transaction of more than $10,000 must be broken into smaller increments, each of which typically is for less than $10,000, thus avoiding the reporting requirement. This is what makes it structuring.”). In other words, under the statutory language, a currency-transaction report is “require[d]” only where a “transaction” involves more than $10,000. Inherent in such a requirement is the existence of at least $10,000.01 that could be deposited, withdrawn, exchanged or transferred by, through, or to a financial institution in a single transaction, without which a report would not be “require[d].”
And, even to the extent that § 5324(c)(3) may be viewed as ambiguous on this issue, the legislative intent is perfectly clear. Indeed, the Senate Report accompanying the Money Laundering Crimes Act of 1986 expressly stated the statute’s intention to exclude from the reach of the anti-structuring statute transactions arising out of a total sum of $10,000 or less:
[T]he proposed amendment would create the offense of structuring a transaction to evade the reporting requirements, without regard to whether an individual transaction is, itself, reportable under the Bank Secrecy Act. For example, a person who converts $18,000 in currency to cashier’s checks by purchasing two $9,000 cashier’s checks at two different banks or on two different days with the specific intent that the participating bank or banks not be required to file Currency Transaction Reports for those transactions, would be subject to potential civil and criminal liability. A person conducting the same transactions for any other reasons or a person splitting up an amount of currency that would not be reportable if the full amount were involved in a single transaction (for example, splitting $2,000 in currency into four transactions of $500 each), would not be subject to liability
S.Rep. No. 99-433, 22 (1986) (emphasis added).
This commentary could not state more straightforwardly that a person simply cannot commit the offense of structuring if he does not control more than $10,000, even if he has the specific intent to evade a reporting requirement. Despite this fact, the Court suggests that we look not at the amount that the person controlled at the time that she conducted a transaction of $10,000 or less but instead at the endpoint of all of the transactions that the government happens to choose to charge to see whether they add up to more than $10,000. Maj. Op. at 1122-23 &. 1124 n. 4. I’m guessing that they always will.
I respectfully disagree with the Majority’s approach. This interpretation does not account for the phrase “splitting up an amount of currency that would not be reportable if the full amount were involved in a single transaction!)]” S.Rep. No. 99-433, 22 (1986) (emphasis added). The phrase lays bare congressional intent that a person necessarily control a hoard, of more than $10,000 before she can structure transactions. To “split” means “[t]o separate ...; disunite.” Split, The Am. Heritage Dictionary of the English Language (4th ed.2000). A person cannot disunite something that does not yet exist. Instead, as the two examples in the commentary illustrate — one involving the splitting up of $18,000 into two transactions of $9,000 each and the other involving the splitting up of $2,000 into four transactions of $500 each — a united whole must first exist before it can be disunited.[3]
*1132 We are not at liberty to construe the statute' more broadly than it was written and than we know Congress intended. But that is what the Court’s opinion does today in holding that a person may violate § 5324(a)(3), even if he lacks control over more than $10,000.
B. The Regulatory Definition of “Structuring” Cannot Support the Conclusion that the Anti-structuring Statute Covers Transactions Where the Person Did Not Have Control of At Least $10,000
Nor does the regulatory definition of “structuring” somehow expand the breadth of § 5324(a)(3). To begin with, the regulatory definition of “structuring” does not, as the Court suggests, necessarily indicate that a person can structure even where he has control over $10,000 or less. The regulation provides,
Structure (structuring). For purposes of § 1010.314, a person structures a transaction if that person ... conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements.... “In any manner” includes, but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller transactions at or below $10,000. The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.
31 C.F.R. § 1010.100(xx). At least one treatise has characterized this definition as “presuming] the existence of an initial sum.” B. Frederic Williams, Jr., & Frank D. Whitney, Federal Money Laundering: Crimes and Forfeitures 224 (1999).
A review of the notice and comment materials regarding the promulgation of this regulation supports this construction. The Treasury Department based its definition of “structuring” on the concerns that Congress expressed in its reports in support of the enactment § 5324. See Amendment to the Bank Secrecy Act Regulations Relating to Domestic Currency Transactions, 53 Fed.Reg. 3023 (Jan. 23, 1989),(citing H.R.Rep. No. 746, 99th Cong., 2d Sess. 18-20 (1988); S.Rep. No. 433, 99th Cong., 2d Sess. 21-22 (1986)).
*1133 These reports show, in turn, that Congress enacted § 5324(a) to address two specific problems. First, some courts had held that pre-§ 5324 law did not prohibit structuring of any type because the law required only that financial institutions report transactions involving at least $10,000 and imposed no obligations on bank customers. As a result, these courts concluded that customers’ actions to cause a financial institution not to file a required report were not prosecutable.[4] Second, under pre-§ 5324 law, the Bank Secrecy Act did not even arguably prohibit conduct where a person with a reportable sum conducted smaller transactions at different banks or on different days to avoid the reporting requirement. Under those circumstances, the financial institutions would not have an obligation under the Bank Secrecy Act to file a report since the $10,000 threshold amount was not transacted in a single day at a single financial institution. See H.R.Rep. No. 99746, 18-19 (1986) (citing United States v. Anzalone, 766 F.2d 676 (1st Cir.1985); United States v. Varbel, 780 F.2d 758 (9th Cir.1986); United States v. Denemark, 779 F.2d 1559 (11th Cir.1986)); see also United States v. Phipps, 81 F.3d 1056, 1060-61 (11th Cir.1996).
, Section 5324(a)(1) was designed to address the first problem by expressly criminalizing causing or attempting to cause a financial institution to fail to file a required report. See Phipps, 81 F.3d at 1060. Congress intended for § 5324(a)(3) to cover the second problem by creating a mechanism to prosecute the structuring of sums over $10,000 when the method of structuring did not trigger the financial institution’s obligation to file a report. Id.; see also H.R.Rep. No. 99-746 at 19 (citing an incident where two people laundered $200,000 in cash in a day and a half by purchasing cashier’s checks, each for less than $10,000, at several different banks).
In both cases, Congress was specifically concerned with conduct where a person who had within his control a reportable sum made smaller transactions to avoid triggering the filing of a required report. Thus, in the announcement of its final rule, the Treasury Department explained,
The enactment of section 5324 clarified that all currency transaction structuring schemes designed to evade the reporting requirements are unlawful, regardless of whether the $10,000 threshold is met at a single financial institution on a single day.
Amendment to the Bank Secrecy Act Regulations Relating to Domestic Currency Transactions, 54 Fed.Reg. 3023 (Jan.23, 1989). Against this background, it is clear that this explanation presumes a preexisting $10,000 sum, in implicit reliance on the purposes behind the enactment of § 5324(a)(1) and § 5324(a)(3).
The Court’s invocation of the phrase “but is not limited to” does not somehow alter the natural and intended understanding of the regulatory definition. I agree with the Court that the phrase “but is not limited to” could be viewed as supporting the notion that “dividing a sum the defendant has in hand is not the only way to violate the statute.” Maj. Op. at 1122. *1134 But the conclusion that the regulation must therefore also include circumstances where a person does not have a right of control of at least $10,000 in cash does not necessarily follow. First, the phrase “but is not limited to” does not mean that the definition of “structuring” is without any limits. Instead, it means only that a person may be able to structure transactions in ways other than the example provided in the regulation.
Second, in fact, people have found ways to structure a sum of more than $10,000 other than by “dividing a sum the defendant has in hand” into packets of $10,000 or less each, that still otherwise meet the regulatory definition of “structuring.” For example, defendants have also used creative billing mechanisms, such as requiring clients to pay in numerous small installments, to avoid ever having “in hand” a sum that would trigger the reporting threshold. See, e.g., United States v. Chaplin’s, Inc., 646 F.3d 846, 847 (11th Cir.2011) (affirming forfeiture order imposed after defendant was convicted of structuring a transaction by instructing a client to pay in “three separate bundles” to avoid the reporting requirement).
Similarly, the example that the Court provides today — a defendant who has checks totaling $9,000 and knows he will receive another bundle of checks totaling more than $10,000 tomorrow cashes his $9,000 in checks today to avoid the reporting requirement — also can meet the regulatory definition of “structuring” that Congress intended when it enacted § 5324(a)(3). If the defendant had an ability to control the checks in both packages and cashed the first group before the second group arrived in order to evade the reporting requirement, I agree with the Majority that the defendant would be guilty of structuring.
Unlike the broad definition of “structuring” that the Court adopts today, this form of structuring satisfies the definition of “structuring” that Congress intended when it enacted the anti-structuring statute. Nevertheless, it does not fall neatly within the express example of structuring that the regulatory definition supplies, so it is covered by the “but is not limited to” phrase.
Finally and most important, reading the regulation as broadly as the Court does today causes the regulation to conflict with congressional intent in enacting the anti-structuring statute. But courts “must reject administrative constructions which are contrary to clear congressional intent.” Chevron, U.S.A. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984) (citations omitted). Indeed, “a regulation must be interpreted so as to harmonize with and further and not to conflict with the objective of the statute it implements.” Emery Min. Corp. v. Sec’y of Labor, 744 F.2d 1411, 1414 (10th Cir.1984). Because the Court’s interpretation of the regulation directly conflicts with congressional intent in enacting § 5324(a)(3), I cannot agree with it.

C. The Precedent from the Seventh and Eighth Circuits Is Not Persuasive

It is true, as the Court points out, that two other circuits have reached the contrary conclusion, holding that a person need not have a right to control a sum of more than $10,000 before that person can engage in structuring. See Maj. Op. at 1121 (citing United States v. Sweeney, 611 F.3d 459, 471 (8th Cir.2010), and United States v. Van Allen, 524 F.3d 814, 820 (7th Cir.2008)). But neither of these courts appears to have engaged in any analysis of the language or considered the legislative intent of § 5324(a)(3). Instead, they ap *1135 pear to have predicated their interpretation of § 5324(a)(3) entirely on what they understood 31 C.F.R. § 1010.100(xx) to mean.
In Van Allen, for example, the analysis first acknowledged that the court had previously made the statement in United States v. Davenport, 929 F.2d 1169 (7th Cir.1991), that the intent of the anti-structuring statute was to prevent individuals from evading the reporting requirement “ ‘by breaking their cash hoard into enough separate deposits to avoid activating the requirement.’ ” Van Allen, 524 F.3d at 820-21 (quoting Davenport, 929 F.2d at 1173). Then the court concluded simply,
We did not hold, as Van Allen intimates, that this was the only method of proving structuring — indeed, we further defined “structuring” as “altering the form of a transaction in order to avoid activating the bank’s duty to file a currency transaction report.” This definition meshes well with that in the Treasury regulation and accurately describes Van Allen’s activities in this case.
Id. at 821 (internal citations omitted). That’s it.[5]
Sweeney’s analysis followed a similar path. The court began by setting forth the regulatory definition of “structuring” and then commented only that, “[i]n our view, the regulations accurately describe the various ways that a person may commit the offense of currency structuring in violation of § 5324(c)(3).”[6] Sweeney, 611 F.3d at 471. In support of this statement, the court relied on an unpublished opinion from our Court, which, in turn cited Phipps for the proposition that, “[b]y its plain language, the statute prohibits transactions of less than $10,000 that are intended to evade reporting requirements.” Sweeney, 611 F.3d at 472 (quotation marks omitted). Beyond citing the regulation and referring to Phipps, the rest of the analysis relied exclusively on Van Allen.See id.
But even Sweeney’s reliance on Phipps was misplaced. Phipps did not hold or even suggest that § 5324(c)(3) criminalizes the structuring of amounts that add up to a total sum of less than $10,000. Instead, Phipps explained only the congressionally intended difference between §§ 5324(a)(1) and 5324(a)(3), as revealed by the Senate and House Reports accompanying the legislation. Nothing in Phipps purported to opine that § 5324(a)(3) authorizes structuring charges against a person who does not have control over at least $10,000 before he or she transacts in smaller amounts.
In short, neither Sweeney nor Van Allen set forth any analysis of the statutory language or considered the legislative intent of § 5324(a)(3). Instead, both cases effectively relied on only their own interpretation of the regulatory definition of “structuring.” But, for the reasons previously *1136 explained, that cannot carry the day. So I respectfully disagree with the conclusions reached by Sweeney and Van Allen.

D. The Rule of Lenity Does Not Abide the Court’s Interpretation of § 5324(a)(3)

Finally, again, to the extent to which« § 5324(a)(3) may be viewed as ambiguous about whether a person who controls $10,000 or less when that person transacts smaller amounts can commit a violation of § 5324(a)(3), the rule of lenity demands that we construe § 5324(a)(3) not to cover such conduct. Under the rule of lenity, “ambiguous criminal laws [must] be interpreted in favor of the defendants subjected to them.” United States v. Santos, 553 U.S. 507, 514, 128 S.Ct. 2020, 2025, 170 L.Ed.2d 912 (2008).
This venerable rule, not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed. It also places the, weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress’s stead.
Id. If, as the Court holds, § 5324(a)(3) is “read ... broadly, courts ... run afoul of the Rule of Lenity, which insists that ambiguity in criminal legislation be read against the prosecutor.” United States v. Jimenez, 705 F.3d 1305, 1308 (11th Cir.2013) (internal quotation marks omitted). So, even assuming that, in a vacuum, the language of § 5324(a)(3) is susceptible to being construed the way the Court holds today, when “there are two rational readings of a criminal statute, one harsher than the other, the rule of lenity dictates that we are to choose the harsher one only when Congress has spoken in language that is clear and definite.” United States v. Inclema, 363 F.3d 1177, 1182 (11th Cir.2004) (internal quotation marks omitted).
As previously discussed, a natural reading of § 5324(a)(3) leads to the conclusion that the statute contemplates covering only those transactions that originate from a sum that the defendant controls in excess of $10,000. See Lang, 732 F.3d at 1248 (“ ‘for the purpose of evading’ the reporting requirements” means that “the structured transaction must involve an amount that is more than $10,000; otherwise, evasion would not be necessary or possible because there would be no reporting requirement anyway.”); see also Aunspaugh, 792 F.3d at 1311. As this construction of the statute is rational and more lenient than the one the Court adopts today, it should govern.
II.
Though I respectfully disagree with the Court’s broad construction of § 5324(a)(3), I agree with the Court that the government nonetheless presented sufficient evidence to sustain a structuring conviction in this case under the definition of “structuring” that Congress intended. In fact, I would uphold conviction on two counts of structuring.
At trial, the government presented evidence that on 15 separate days in 2007 and 13 separate days in 2008, Sperrazza made cash deposits and cashed checks totaling over $10,000. The government’s evidence demonstrated that when Sperrazza conducted these transactions he first deposited the cash and then cashed the checks. Because of this sequence of events, the cash amounts Sperrazza had were necessarily distinct from the cash received from the checks, so Sperrazza had access to and control over $10,000 on each of those days ■but chose to transact in cash amounts under $10,000. In addition, as the Court *1137 recounted, the government introduced other evidence of Sperrazza’s intent to evade the reporting requirements. Put simply, this evidence, when viewed in the light most favorable to the government, established that Sperrazza structured not one transaction over $10,000 in violation of § 5324(a)(3), but at least 28 discrete transactions of distinct sums over $10,000 in order to avoid the reporting requirements. See Lang, 732 F.3d at 1249.
Under plain-error review, which applies here because Sperrazza did not raise this particular error, even assuming plain error in how the indictment was charged, Sper-razza has shown no prejudice. See United States v. Vernon, 723 F.3d 1234, 1260 (11th Cir.2013) (reviewing for plain error unpre-served challenges to an indictment and affirming convictions where, even if plain error had occurred, defendant failed to prove prejudice). All of the smaller transactions comprising each of the reportable sums during 2007 and 2008 were set forth in the two separate structuring counts in the indictment, so Sperrazza had notice of the transactions that the government contended constituted structuring.[7] For these reasons, I concur in the majority’s ultimate ' conclusion that Sperrazza’s conviction must be affirmed.

. While the Court describes Lang as holding only that "each count of structuring must include two or more transactions,” Maj. Op. at 1122, I respectfully disagree that Lang can • be cabined in that way. On the contrary, our characterization of the problems with the way structuring was charged and our direction on how it should have been charged in Lang fully supports the view that, for structuring to oc *1130 cur, a person must have legal access to at least $10,000. We explained in Lang,
The government's theory ... is that Lang received from one source 21 payments exceeding $10,000 over a period of eight months, he had those larger payments broken into multiple checks each of which was less than $10,000, and he then cashed those checks separately in a way that evaded the reporting requirements. That is all well and good, but it is not what is alleged in the indictment. Instead of a series of counts each alleging a payment or payments totaling more than $10,000 that were structured into checks of smaller amounts, which were then cashed, the indictment consists of 85 counts each of which separately alleges that a single check in an amount less than $10,000 was structured.
732 F.3d at 1249 (emphasis added). As this excerpt shows, while we identified "[t]he structuring itself, and not the individual deposit” as the unit of prosecution, id. at 1248 (citation and internal quotation marks omitted), we further indicated that the “structuring itself,” meaning the prosecutable unit, refers to the payment or group of payments "totaling more than $10,000 that were structured into checks of smaller amounts, which were then cashed." Id. at 1249 (emphasis added). In other words, we understood structuring to first require a hoard of more than $10,000, from which smaller transactions were "then” (z.e., later) engaged in. Our description of how the government should have charged the conduct also reveals that we thought that there should have been a “series of counts," meaning 21 counts based on the "21 payments exceeding $10,000 over a period of eight months,” which were then "broken into multiple checks each of which was less than $10,000,” and cashed; we did not suggest that the government should have charged a single count stemming eight months.

. The Court suggests that “Aunspaugh is of a piece with our disposition of this case” because there we affirmed a structuring conviction where the government charged the defendants with a single count of structuring that encompassed 15 transactions, each of $10,000 or less,, that occurred over a few months. Maj. Op. at 1121-22. But nothing in that opinion indicated that at the times when each of the 15 transactions alleged in the indictment were conducted, the defendants did not control more than $10,000. Indeed, Aunspaugh itself described the checks involved as being for "amounts just below the reporting requirement.” 792 F.3d at 1310. Moreover, the Aunspaughs did not complain on appeal that they did not control at least $10,000 at the times that they were alleged in the indictment to have engaged in the structuring acts. Instead, the Aunspaughs argued that “a person does not engage in structuring unless 'each' transaction the person participates in is for $10,000 or less.” Id. at 1311. We rejected this contention, explaining,
To constitute structuring, a transaction of more than $10,000 must be broken into smaller increments, each of which typically is for less than $10,000, thus avoiding the reporting requirement. But a person who once engages in a transaction for more than $10,000 does not get a pass to structure later transactions with impunity.
Id. In other -words, we confirmed in Auns-paugh our understanding expressed in Lang: to structure, a person must control at least a reportable amount. To the extent that the Court’s opinion can be viewed as positing that the form of the indictment in .Aunspaugh suggests that the defendants did not control more than $10,000 during some or all of the specific transactions alleged - in the structuring count, it would have been quite strange for us to have defined structuring in Aunspaugh in a way that conflicted with tire facts of that very case. Instead, it is clear that the problem that today's Majority picks up on in Auns-paugh is one of form of the indictment; to the extent that any two or more of the transactions charged represented smaller transactions derived from a reportable amount, separate from the other transactions alleged in the structuring count, the conduct should have been charged in as many counts as hoards that were structured. But no party in Auns-paugh ever raised that as an issue, so we had no reason to evaluate it, and we did not even purport to consider it. For that reason, our affirmance of the Aunspaughs' convictions cannot be construed as confirmation that stringing together a bunch of otherwise-unc-hargeable transactions over a lengthy period to arrive at a total sum of more than $10,000 somehow renders the conduct structuring.

. While the Majority states that it "ex-pressfes] no view whether the Government *1132 may charge a defendant with more than one count of structuring under the circumstances presented by this appeal[,]” Maj. Op. at 1125 n. 5, the Majority’s view nonetheless suggests that there is never any reason to charge more than one count of structuring against a particular defendant — indeed, under the theory announced today, it may well be wrong to charge more than one count of structuring against a single defendant because every cash transaction of $10,000 or less- during the statutory period constitutes part of a giant, single structuring violation since we look solely to the total amount transacted during the statutory period. To illustrate the problem with this theory, consider the facts here. Significantly, under the Majority's theory, the government concedes that Sperrazza’s indictment erred in charging two counts of structuring where it should have charged a single count by grouping the individual transactions into one oversized transaction encompassing all transactions occurring in both 2007 and 2008. This cannot be correct. Sperrazza’s money derived from cash and checks that his patients used to pay him in connection with his anesthesiology practice. Charging two years of transactions in a single count is like saying that all of Sperrazza’s transactions between January 2007 and December 2008 were smaller pieces of a single giant sum that Sperrazza knew he would ultimately possess. It holds Sperrazza liable in January 2007, for monies he received from patients in, say, July 2008, even though he could not have known, when he engaged in transactions in January 2007, that he would even see those patients or how much money he would receive from those visits.

. For example, if a customer divided a sum of more than $10,000 into smaller amounts and deposited the smaller amounts at three different branches of the same bank on the same day, a financial institution might not have realized that more than $10,000 had been transacted in a single day and had triggered the financial institution’s obligation to file a Currency Transaction Report. Despite the fact that the customer intended to cause the bank not to file the required report, some courts held pre-§ 5324 that no cause of action existed to prosecute the customer's conduct-since the law imposed no reporting obligations on customers — only on financial institutions.

. Interestingly, though, the Van Allen Court expressly recognized concerns raised by its construction of § 5324:
We acknowledge the issue raised by Van Allen concerning the implications of 31 U.S.C. § 5324(a)(3) for certain types of businesses. Small enterprises dealing primarily in cash and seeking to avoid an illegal structuring charge could theoretically be forced to maintain large amounts of cash on hand until meeting the $10,000 threshold.
524 F.3d at 821. But the court brushed off this problem with its construction, explaining only, “The fear raised, in this case at least, rings a bit hollow[,]” since Van Allen was not in that situation. Id.

. Section 5324(c)(3) is analogous to § 5324(a)(3), but it prohibits structuring importation or exportation of monetary instruments, as opposed to structuring of domestic transactions involving financial institutions.

. The government also presented evidence that Sperrazza received packages of patient checks above $10,000, on five occasions: (1) February 14, 2008, totaling $10,763.38; (2) March 20, 2008, totaling $11,765.17; (3) April 3, 2008, totaling $10,416.75; (4) May 15, 2008, totaling $10,805.13; and (5) October 10, 2008, totaling $14,385. To the extent that any of the transactions listed in the structuring counts included cashed checks from these hoards, sufficient evidence also exists to uphold the convictions on these grounds, since the government also set forth sufficient evidence of intent to evade the reporting requirements.